## SAIF ABDO *v.* ALI ABDULRAHMAN ET AL.

## GIMMA, LLC *v.* SAIF ABDO ET AL.
### (AC 33957)

DiPentima, C. J., and Lavine and Robinson, Js.

Submitted on briefs April 22—officially released July 30, 2013

*John A. Florek* filed a brief for the appellant (plaintiff in the first case, named defendant in the second case).

*Alan S. Tobin* filed a brief for the appellees (defendants in the first case, plaintiff in the second case).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Saif Abdo, appeals from the judgment of the trial court determining that there was no partnership agreement between the plaintiff and the defendant Ali Abdulrahman.[1] The plaintiff claims that the court erred in (1) failing to declare Gimma as a constructive trustee for a one-half interest in real property located at 281 Davenport Avenue in New Haven, (2) ruling that the defendant was not liable for sales and use taxes for the business known as the "24/7 Convenience Store," and (3) failing to order an

---

[1] Saif Abdo also named Gimma, LLC (Gimma), as a defendant in his action, filed in May, 2009. Gimma is a limited liability company registered in Connecticut. Its principal member is Ali Abdulrahman. Gimma brought a summary process action against Abdo in June, 2009, seeking a judgment of possession of 281–285 Davenport Avenue, New Haven. The summary process action was consolidated with Abdo's May, 2009 action. The issues on appeal concern Gimma in addition to Abdulrahman and concern only the May, 2009 action. For the sake of clarity, we therefore refer in this opinion to Abdulrahman as the defendant, Abdo as the plaintiff, and Gimma by name.

accounting of the 24/7 Convenience Store. The basis of the plaintiff's claims is his disagreement with the trial court's conclusion that his testimony was not credible. Applying the appropriate deferential standard of review to those claims, we affirm the judgment of the trial court.

The following facts and procedural history were set forth in the court's memorandum of decision and are supported by the record. The defendant immigrated to the United States in 1982. The plaintiff immigrated to the United States in 1998. Before the plaintiff arrived in the United States, the defendant had obtained possession of "several real estate properties and stores . . . ." The defendant welcomed the plaintiff to the United States, and the plaintiff began working for the defendant, eventually running several of the defendant's retail operations. The plaintiff also lived in an apartment above one of the defendant's properties at 281 Davenport Avenue; he did not pay rent. In August, 2000, the plaintiff and the defendant executed an ownership agreement as to the 24/7 Convenience Store, which stated: "This letter details the ownership agreement of 24/7 Convenience Store 815 Dixwell Avenue, Hamden, CT. [The defendant] is 95% owner of above-mentioned convenience store and [the plaintiff] is 5% owner. [The defendant] invested 100% of the capital for this business." The plaintiff and the defendant both signed this agreement, and the document was notarized.

On August 2, 2002, Michael Samander executed a warranty deed, conveying 281–285 Davenport Avenue to the defendant. The defendant subsequently quit-claimed the property to Gimma. The plaintiff testified that he knew Samander and that he had participated in discussions regarding the sale of the property, but that he was not present at the time of the closing. At trial, the plaintiff introduced a document titled the "Rahman/Abdo Partnership Agreement" and dated

November, 2008, which provided for the defendant and the plaintiff to each possess 50 percent of the defendant's businesses. The defendant never signed this document.

In May, 2009, the plaintiff brought this action, alleging that he and the defendant entered into a partnership concerning a property called the Pyramid Grocery Store, the 24/7 Convenience Store, and a third property at 342 Whalley Avenue in New Haven. The plaintiff alleged further that he contributed equally in order to purchase the properties and that he did not consent to the defendant taking title to 281–285 Davenport Avenue in his name only, nor did he consent to the conveyance of the property by the defendant to Gimma. The plaintiff sought (1) an accounting for the "financial affairs of the partnership," (2) a declaration of Gimma as a constructive trustee for the plaintiff's alleged 50 percent interest in 281 Davenport Avenue, (3) a conveyance from Gimma of a 50 percent interest in 281 Davenport Avenue to the plaintiff, (4) monetary damages, (5) punitive damages, and (6) attorney's fees. The defendant denied the existence of a partnership.

In May, 2009, Gimma served the plaintiff with a notice to quit possession of the property at 281 Davenport Avenue. Thereafter, in June, 2009, Gimma brought a summary process action against the plaintiff in the housing session of the Superior Court, seeking a judgment of possession of the property. In December, 2009, the plaintiff moved to consolidate his action and the June, 2009 housing court action. The court, *Silbert, J.*, granted the motion. The trial of the consolidated actions took place on April 7 and 26, 2011.

The court, *Hon. David W. Skolnick*, judge trial referee, filed a memorandum of decision on June 21, 2011. In the memorandum, the court outlined the parties' positions with respect to the properties in question and

to their relationship with each other. The court noted that the defendant testified that "I met [the plaintiff] in 1998—he came to me to get a job. He came to me, I gave him shelter, I gave him money, I gave him a car." Both the plaintiff and the defendant testified at trial, along with seven other individuals who knew the parties and who also had immigrated to the United States. These individuals testified that they "overheard [the defendant] state that [the plaintiff] was his partner." The court noted the contrast between these descriptions of the plaintiff's relationship with the defendant and the defendant's testimony, wherein he "vehemently denied ever stating that [the plaintiff] was his partner . . . [or telling the plaintiff] that he was his equal partner." Ultimately, after hearing testimony and reviewing evidence, the court concluded: "The claim of [the plaintiff] that he was given 50 [percent] ownership of those businesses by [the defendant] without paying anything for becoming an equal partner the court finds not to be credible." The court rejected the plaintiff's claim of an ownership interest in the properties at 281–285 Davenport Avenue and 342 Whalley Avenue. Further, the court ordered the plaintiff to vacate the apartment at 281 Davenport Avenue. The court acknowledged the plaintiff's 5 percent ownership interest in the 24/7 Convenience Store, but concluded that there was no partnership between the plaintiff and the defendant apart from the distribution of interest in the property outlined in the ownership agreement. The court offset any payments due to the plaintiff because of his 5 percent interest and his rent free accommodation for several years.

The plaintiff filed a motion for reconsideration in which he argued that the court failed to take into account his relationship with the defendant, his managerial positions at the various properties, and the defendant's tax liabilities for the properties. The court denied

the motion, stating in relevant part: "[T]he court believes that it covered all bases in its decision including those raised by [the plaintiff's] motion . . . ." This appeal followed.

The plaintiff claims that the court's decision was clearly erroneous. Specifically, the plaintiff argues that "based on a consideration of the evidence introduced at trial and the record as a whole," the court's conclusions were contrary to the evidence. We disagree.

There is no dispute as to the applicable standard of review of the plaintiff's claims of erroneous factual findings. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Farricielli*, 307 Conn. 787, 816–17, 59 A.3d 789 (2013). "[A] partner is both principal and agent, principal as to himself and agent as to other partners. . . . Such an agency, where the facts are conflicting, is one of fact . . . ." *Hotchkiss* v. *DiVita*, 103 Conn. 436, 446–47, 130 A. 668 (1925).

In its memorandum of decision, the court noted the discrepancies between the testimony of the parties. It also discussed the testimony given by individuals who shared the same ethnic background as the plaintiff, and testified that in their culture "business dealings are a

matter of 'trust' " which therefore "eliminates the need for a paper trail." The court, after hearing the evidence, concluded that "[t]he claim of [the plaintiff] that he was given 50 [percent] ownership of [the] businesses by [the defendant] without paying anything for becoming an equal partner the court finds not to be credible." The court did find credible the testimony that the defendant hired the plaintiff when he arrived in the United States in 1998. The court noted that it also found credible the testimony that the defendant gave the plaintiff managerial responsibilities in his stores and allowed him to live in an apartment the defendant owned without paying rent. There is evidence to support the court's determination that there was no partnership between the defendant and the plaintiff beyond their division of the 24/7 Convenience Store. Making every reasonable presumption in favor of the trial court's ruling, we conclude that the decision as to the existence of a partnership, therefore, was not clearly erroneous.[2]

Further, the issue of the payment of taxes is not properly before this court. The plaintiff's operative complaint, dated April 30, 2009, is devoid of any allegation addressed to the payment of taxes or tax liability. At trial, the plaintiff was questioned extensively regarding the nature of the alleged partnership, and during such questioning the plaintiff discussed the various arrangements between the plaintiff and the defendant for the payments of taxes on the different properties. The plaintiff stated that the sales and tax permit for the 24/7 Convenience Store was in his name only. The plaintiff also identified checks he had written to pay for city taxes on the 24/7 Convenience Store. The plaintiff raised

---

[2] Because we conclude that there was no error in the court's determination that no partnership existed beyond the partition of ownership of the 24/7 Convenience Store, we need not address the plaintiff's claim that the court erred in failing to order an accounting. Beyond his argument that there was a partnership, the plaintiff offers no reason why such an accounting is owed by the defendant.

the issue of tax liability in his motion to reconsider, and the court noted it in its denial of the motion.[3]

In any event, we are not required to review an improperly raised claim. "Pleadings have an essential purpose in the judicial process. . . . The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings. . . . [A]ny judgment should conform to the pleadings, the issues and the prayers for relief." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Dickman* v. *Office of State Ethics, Citizen's Advisory Board,* 140 Conn. App. 754, 759–60, 60 A.3d 297, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013). "We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected . . . ." (Internal quotation marks omitted.) *Simmons* v. *Simmons,* 244 Conn. 158, 187, 708 A.2d 949 (1998). The plaintiff did not raise the issue of tax liability in his complaint, and although the court heard the plaintiff's testimony regarding the payment of taxes and acknowledged that the plaintiff raised the tax liability claim in his motion to reconsider, the court based its denial of the motion to reconsider on its determination of the plaintiff's lack of credibility. We already have concluded that such a determination was not erroneous. Accordingly, the claim with respect to tax liability was not

[3] The court stated: "[T]he court believes that it covered all bases in its [memorandum of] decision including those raised by [the motion to reconsider] in view of the fact that the defendant claimed he was frozen out of the store as far back as 2000 and during the period from 2000 to 2008, a period where the plaintiff was the sole proprietor of the business and received all proceeds from the store and therefore should bear the sales and use tax despite his 5 [percent] interest in the property."

properly before the trial court and is not properly before this court.

The judgment is affirmed.

In this opinion the other judges concurred.