******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JACK E. LYNN ET AL. *v.* ROBERT J.
BOSCO, SR., ET AL.
(AC 39172)

Prescott, Elgo and Norcott, Js.

*Syllabus*

The plaintiffs sought, inter alia, a declaratory judgment determining whether
their preemptive rights as shareholders of stock in the defendant corpo-
ration, A Co., were violated in connection with the sale and distribution
of 141 shares of A Co.'s treasury stock to the individual defendants, B,
P, R and W, who constituted A Co.'s board of directors. In their com-
plaint, the plaintiffs alleged that the individual defendants had breached
their fiduciary duties to the plaintiffs by self-dealing and had violated the
plaintiffs' preemptive rights as shareholders. The individual defendants
moved to strike the complaint on the ground that the plaintiffs had
failed to join a necessary party, A Co., as a defendant. In response, the
plaintiffs filed a motion to cite in A Co. as a defendant for the purpose
of notice only, which the trial court granted. The plaintiffs then filed
an amended complaint, which named A Co. as a defendant but did not
include any allegations against or seek relief from it. Thereafter, the
trial court denied the motion to strike, and the individual defendants
filed an answer, special defenses and a counterclaim, but did not assert
a cross claim against or seek any relief from A Co. Halfway through
the first day of the trial, the court, without objection, released A Co.'s
counsel from attending the remainder of the proceedings because he
had no active role in the litigation, as A Co. was not an adversarial
party. Following the trial, the court rendered judgment in favor of the
plaintiffs in part, finding that their preemptive rights had been violated
by the sale of the shares of A Co.'s treasury stock to the individual
defendants and that B, P and W had engaged in self-dealing by awarding
themselves bonuses in connection with that transaction. The court con-
cluded that the plaintiffs were entitled to equitable relief and requested
that the parties submit proposed remedies but did not indicate that they
should address what role A Co. should play, if any, at the remedy stage.
Thereafter, the court ordered, inter alia, that the subject transaction be
set aside and that A Co. reimburse the present owners of the 141 shares
of stock. On A Co.'s appeal to this court, *held* that the trial court did
not have the authority to order equitable relief that imposed a remedy
on A Co., as A Co. had no notice that such relief would enter against
it, resulting in unfair surprise to it: the court's order was inconsistent
with the issues as framed in the pleadings, which did not include any
allegations of wrongdoing against A Co. or seek any relief from it, and
with its finding that B, P and W had engaged in self-dealing in connection
with the subject transaction, and there was nothing in the record that
indicated that the parties litigated the case as if the court might order
A Co. to reimburse the owners of the 141 shares of stock, as the conduct
of counsel and the court during and immediately following the trial was
consistent with the pleadings, in that they did not act as if the parties
had made any allegations against or sought relief from A Co.; moreover,
when the court, without objection, excused A Co.'s counsel on the first
day of the trial, the parties effectively acknowledged that his presence
was unnecessary given the posture of the case, and A Co. relied on the
state of the pleadings in opting not to participate further in the trial.

Argued November 16, 2017—officially released May 29, 2018

*Procedural History*

Action for, inter alia, a declaratory judgment
determining whether the plaintiffs' preemptive rights
were violated in connection with the sale of certain
shares of stock, and for other relief, brought to the
Superior Court in the judicial district of New Britain,
where the court, *Robaina, J.,* granted the plaintiffs'

motion to cite in Aerospace Techniques, Inc., as a defendant; thereafter, the named defendant et al. filed a counterclaim; subsequently, the matter was tried to the court, *Hon. Lois Tanzer*, judge trial referee; judgment in part for the plaintiffs on the complaint and on the counterclaim; thereafter the court, *Hon. Lois Tanzer*, judge trial referee, issued a certain order, from which the plaintiffs and the defendant Aerospace Techniques, Inc., appealed to this court. *Appeal dismissed in part; judgment reversed in part; further proceedings.*

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellants (defendant Aerospace Techniques, Inc., and plaintiffs).

*Dale M. Clayton*, for the appellee (defendant Richard B. Polivy).

*Megan Youngling Carannante*, with whom, on the brief, were *Eliot B. Gersten* and *Johanna S. Katz*, for the appellee (named defendant).

*Opinion*

ELGO, J. This case is about the propriety of a judicial remedy binding a company that had been cited in as a party by the plaintiffs, Jack E. Lynn and Jeffrey Lynn, for notice purposes only and against whom no allegations had been pleaded. The defendant Aerospace Techniques, Inc. (company),[1] appeals from the January 11, 2016 judgment of the trial court ordering the company to pay the owners of 141 shares of treasury stock issued to the defendants Clyde E. Warner,[2] Robert J. Bosco, Sr. (Bosco), Anthony Parillo, Jr., and Richard B. Polivy[3] in exchange for the return of the 141 shares to the company. The company claims that the trial court acted beyond the scope of its authority by entering an order that imposed a remedy on the company, although neither party made any allegations against or sought relief from the company in the operative complaint. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 1965, Jack Lynn and two other individuals incorporated the company under the laws of Connecticut. Jack Lynn was chairman of the company's board of directors (board) from that time until 2011. In June, 2011, the board, then consisting of Jack Lynn, Bosco, and Warner, met.[4] The board voted to reaffirm Polivy as the company's corporate counsel. Bosco and Warner then voted for Bosco to replace Jack Lynn as chairman and for Bosco and Warner to replace Jack Lynn and Jeffrey Lynn in their respective positions as officers of the company. In October, 2011, Jack Lynn sent a letter to all shareholders of the company, indicating that he and Jeffrey Lynn needed thirty-nine shares of stock to exceed 50 percent ownership of the company, and offering to purchase the first forty-one shares offered to him. Later that month, at the annual shareholder meeting, Jack Lynn was removed from the board, which then was reconstituted with Bosco, Warner, Parillo, and Polivy as directors.

On December 8, 2011, shareholder Joseph R. Dube sent a letter to Bosco, offering to sell his 141 shares to Bosco if the company did not purchase them. At a board meeting on December 14, 2011, the board agreed to seek approval from its bank for the company to purchase Dube's shares and agreed to reissue the shares at $2000 per share, to be sold and distributed as follows: forty-seven shares to Bosco, forty-seven shares to Parillo, forty-six shares to Polivy, and one share to Warner (Dube transaction). The plaintiffs were not aware of the transaction. After receiving the bank's approval, the company paid Dube $100,000 and issued him a promissory note for the outstanding balance of $82,000 in exchange for his 141 shares of stock. Bosco, Parillo, and Polivy each provided a promissory note to the company in exchange for their respective allocation of the shares, agreeing to pay the company in three install-

ments. As the first installment, Bosco and Parillo each promised to pay $32,900, and Polivy promised to pay $32,200. Warner paid the $2000 he owed in cash.

At the December 14, 2011 meeting, the board also agreed to award and pay performance bonuses of $32,900 to Bosco, $32,900 to Parillo, and $2000 to Warner.[5] During the repayment period for their promissory notes, the board awarded additional bonuses to Bosco, Parillo, and Warner of approximately $100,000 each. Polivy never received a bonus.[6]

In December, 2012, the plaintiffs filed a two count complaint against the remaining shareholders.[7] The plaintiffs claimed that Bosco, Parillo, Polivy, and Warner (individual defendants) (1) acquired stock from the company in violation of the plaintiffs' preemptive rights as stockholders and (2) breached their fiduciary duties to the plaintiffs by self-dealing and violating the plaintiffs' preemptive rights. The initial complaint did not name the company as a party.

In January, 2013, the individual defendants moved to strike the plaintiffs' complaint, arguing, in part, that "the plaintiffs fail[ed] to join a proper and necessary party defendant for the declarative judgment sought . . . . [The company] is a necessary party to any declaratory judgment regarding the preemptive rights held by its shareholders and any constructive trust that may (or may not) be created based on the defendants' alleged 'self-dealing.' Additionally, . . . [the company] is the entity which could grant and/or deny the plaintiffs preemptive rights, not the individual defendants." In response, the plaintiffs moved to add the company as a party defendant, arguing that although "the plaintiffs believe that the issue of whether [the company] is a necessary party may be debatable, in the interests of moving this case along the plaintiffs ask the court to grant their motion to cite in [the company] as a party defendant."

The court, *Robaina, J.*, granted the plaintiffs' motion, and the plaintiffs filed an amended complaint, naming the company as a defendant with respect to their claim of a violation of preemptive rights only.[8] The amended complaint did not include any allegations against or seek relief from the company. The court, *Hon. Jerry Wagner*, judge trial referee, thereafter denied the individual defendants' motion to strike, noting in its memorandum of decision that they had conceded that their argument regarding the plaintiffs' failure "to join a proper and necessary party defendant was moot." In October, 2013, the individual defendants filed their answer to the plaintiffs' complaint, therein asserting several affirmative and special defenses, and a two count counterclaim against the plaintiffs. The individual defendants did not assert a cross claim against or seek any relief from the company.

In February, 2014, the company moved to strike the plaintiffs' complaint for failure "to state a cause of action against" it. The plaintiffs opposed the company's motion, noting that the company's "participation in this case is at the insistence of its board of directors," the individual defendants in this case. The plaintiffs noted that the complaint "merely identifies [the company] as an additional defendant in its count one in recognition of the fact that [the company] is, in essence, a mere stakeholder upon the plaintiff's claims, including for declaratory relief, to validate its preemptive rights in [the company's] stock . . . ." The plaintiffs clarified that the company "is not accused of wrongdoing since its actions were only by virtue of the actions of the individual defendants." The court, *Abrams, J.*, denied the company's motion to strike, and the company remained named as a defendant.

In May, 2014, the case proceeded to trial. At the commencement of the first day of the two day trial, the court, *Hon. Lois Tanzer*, judge trial referee, asked the parties about the status of the company's motion to strike. The plaintiffs' counsel explained that the motion had been denied and that the court had decided that "because it's a declaratory judgment action there doesn't need to be adversity against the [company], but it should have formal notice or be joined so the [company] is here." The plaintiffs' counsel further stated: "I did speak to [Mark Block, the company's counsel]. It's my understanding that he's here to represent the [company], but I maintain we are not adverse to the [company]. It's my understanding he's not an active participant." Attorney Block clarified "that as an indispensable party, the [company] should be afforded an opportunity to participate in the proceedings," and therefore reserved that right. The court noted that it believed that the company was brought in so that it could "protect [its] interest." Halfway through the first day of the trial, Attorney Block stated: "[M]y appearance on behalf of the [company] was as a necessary party to a declaratory judgment act, and I have no active role in the litigation, and I've discussed the same with counsel. They have no objection to my being released from the rest of the trial since there's no active role I intend to take at this point." The parties did not object. The plaintiffs' counsel further stated that "it's just an added expense for the [company] which I think under the circumstances is not even necessary." The court released Attorney Block, and he was not present for the remainder of the trial.

Importantly, after the trial concluded on May 16, 2014, but before the court rendered judgment, Warner realigned himself with the plaintiffs, and, as a result, by October 10, 2014, the plaintiffs had become majority shareholders and regained control of the company's affairs. Prior to Warner's realignment, collectively, the

plaintiffs held 950 shares, and the defendants held 1026 shares, of which 605 belonged to Warner. When Warner "teamed [up] with the [plaintiffs]," he and the plaintiffs became majority shareholders, together holding 1555 shares, and the remaining defendants holding 421 shares.

On November 4, 2014, the plaintiffs moved to reopen the evidence, arguing that this reorganization provided them with "access [to] . . . some substantially damaging evidence which had otherwise been concealed and unknown to the plaintiffs and even to . . . Warner in regard to the conduct of Parillo, Polivy, and Bosco . . . ." Soon thereafter, Attorney Block moved to withdraw his appearance, noting that he had been "requested to enter an appearance on behalf of the company to protect the interests of the company although the only allegations were against the individual defendants," and that the reorganization put him "in the position of representing a corporation which is now suing its controlling shareholders . . . ."[9] As the company's controlling shareholders, the plaintiffs did not hire a new attorney to represent the company's interests. In February, 2015, the court held a hearing on the plaintiffs' motion to reopen. The plaintiffs argued that the new information would "demonstrate that the testimony given to the court was not . . . accurate, not forthright in regard to the financial conditions of the company." On March 23, 2015, the court denied the motion, reasoning that the evidence proffered related "to the credibility of testimony and evidence relating to the financial conditions of [the company] at the time of the events complained of in the pleadings and not related to issues of a substantive or material nature."

That same day, the court issued its memorandum of decision, in which it ruled in favor of the plaintiffs on count one of the complaint and for the individual defendants on count two.[10] At the outset, the court noted that the company and Bosco, Jr., were "named as defendants in count one only and only for the purpose of notice." The court then found that the 141 shares of stock that the company reacquired from Dube and then sold to the individual defendants had been subject to preemptive rights. The court thus concluded that the Dube transaction violated the plaintiffs' preemptive rights.[11] The court also found that Bosco, Parillo, and Warner had engaged in self-dealing by awarding themselves bonuses in connection with the Dube transaction but that, nevertheless, the plaintiffs had failed to satisfy all of the elements for a cause of action for breach of fiduciary duty. Specifically, the plaintiffs did not show that they had suffered damages or that any such damages were caused by the individual defendants' actions. Upon determining that the plaintiffs were entitled to equitable relief for the violation of their preemptive rights, the court ordered all parties to submit proposed remedies regarding disposition of the 141 Dube shares,

noting that "[a]side from the form of remedy, there are questions concerning whether payment or reimbursement by the plaintiffs and/or to the defendants will be required and, if so, at what per share price."

The plaintiffs, as well as Polivy and Parillo, filed proposed remedies. In April, 2015, the plaintiffs proposed that the 141 shares should be returned to the company as treasury stock and that the individual defendants should not receive payment for returning their shares because their "source of payment for the shares was the [company] itself through the self-dealing of the [individual] defendants." Additionally, the plaintiffs argued that "[i]n the event the court rejects this approach as to payment . . . the determination of whether or not payment is to be made to the [individual] defendants should await an adjudication of the [other] case" pending between these parties. See *Lynn* v. *Bosco*, Superior Court, judicial district of Hartford, Docket No. CV-14-6063040-S (Lynn II).[12] In July, 2015, Parillo proposed "that the [c]ourt order rescission of the [individual] defendants' purchase of the Dube shares from [the company], with the shares returned to [the company's] treasury and [the company] simultaneously returning the consideration the [individual] defendants paid for these shares." Similarly, Polivy proposed that, upon his return of his shares to the company, the company should pay him the $92,000 he paid out of his personal funds for the shares. The plaintiffs responded that if the court ordered the company to return the $92,000 to Polivy, that money should be held in escrow until *Lynn II* was resolved.

In December, 2015, the court held a hearing on the issue. In response to Polivy's and Parillo's proposed remedies, the plaintiffs argued that "there are no allegations in this case against the [company] and the idea of [the court] just being able to award money or order money from the [company] to be paid to one of the defendants without the [company] being named and given an opportunity to appear in regard to those issues . . . would be improper in this case." The plaintiffs suggested that the appropriate remedy would be for the court "to void the . . . transfer to the individual defendants and then the individual defendants can pursue the [company]" for reimbursement.

On January 11, 2016, the court ordered that (1) the Dube transaction be set aside, (2) the 141 shares be restored to the company's treasury, (3) the company reimburse the owners of the 141 shares, and (4) whether to leave the 141 shares as treasury stock or to sell them be decided at the discretion of the board.

In response, counsel for the company filed an appearance on January 26, 2016, and a motion for the court to reconsider paragraph 3 of its order, reminding the court that the company had been "named as a party only for notice purposes in the litigation pursuant . . .

to the demand of the defendants" and that there had been no "allegations made against the [company] or any request for relief sought against the [company]." Polivy, Parillo, and Bosco objected to that motion. Following a hearing, the court sustained their objections and denied the company's motion to reconsider, reasoning that "the relief sought did include equitable relief and that's the way the order was fashioned. Also, with respect to notice for [the company] in this case, for notice purposes, and there was actual and constructive notice." The plaintiffs and the company appealed from the court's January 11, 2016 order.[13]

On appeal, the company claims that the trial court acted beyond the scope of its authority by entering an order that imposed a remedy on the company despite the fact that none of the pleadings contained any allegations against or sought relief from the company. In response, Bosco and Polivy[14] argue that the court did not err because the plaintiffs had asked for declaratory judgments concerning ownership rights to the company's stock and equitable relief and that the remedy granted was within this prayer for relief.[15] We agree with the company.

We begin by setting forth the applicable standard of review and relevant law. "Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which our review is plenary." *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956, cert. denied, 309 Conn. 912, 69 A.3d 309 (2013). Generally, "it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *Moulton Brothers, Inc.* v. *Lemieux*, 74 Conn. App. 357, 361, 812 A.2d 129 (2002); see also *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 575, 715 A.2d 46 (1998) ("ordinarily a court may not grant relief on the basis of an unpleaded claim"); *Willametz* v. *Guida-Seibert Dairy Co.*, 157 Conn. 295, 302, 254 A.2d 473 (1968) ("[i]t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint" [internal quotation marks omitted]). When reviewing the court's decisions regarding the interpretation of pleadings, "[t]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Provenzano* v. *Provenzano*, 88 Conn. App. 217, 225, 870 A.2d 1085 (2005).

"Pleadings have an essential purpose in the judicial process." (Internal quotation marks omitted.) *Abdo* v. *Abdulrahman*, 144 Conn. App. 574, 581, 74 A.3d 452 (2013). For instance, "[t]he purpose of the complaint is to put the defendants on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Internal quotation marks omitted.) *KMK Insulation, Inc.* v. *A. Prete & Son Construction Co.*, 49 Conn. App. 522, 526, 715 A.2d 799 (1998). "[T]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter." (Internal quotation marks omitted.) *Grovenburg* v. *Rustle Meadow Associates, LLC*, 174 Conn. App. 18, 82–83, 165 A.3d 193 (2017). "Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant." (Internal quotation marks omitted.) *Tedesco* v. *Stamford*, 215 Conn. 450, 459, 576 A.2d 1273 (1990).

"[I]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings. . . . [A]ny judgment should conform to the pleadings, the issues and the prayers for relief." (Internal quotation marks omitted.) *Abdo* v. *Abdulrahman*, supra, 144 Conn. App. 581; see also *Kawasaki Kisen Kaisha, Ltd.* v. *Indomar, Ltd.*, 173 Conn. 269, 272, 377 A.2d 316 (1977). "[A] plaintiff may not allege one cause of action and recover upon another." *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 642, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013). "The requirement that claims be raised timely and distinctly . . . recognizes that counsel should not have the opportunity to surprise an opponent by interjecting a claim when opposing counsel is no longer in a position to present evidence against such a claim." *Swerdloff* v. *AEG Design/Build, Inc.*, 209 Conn. 185, 189, 550 A.2d 306 (1988).

"[G]enerally . . . the allegations of the complaint provide the measure of recovery, and . . . the judgment cannot exceed the claims pleaded, including the prayer for relief. . . . These requirements . . . are based on the principle that a pleading must provide adequate notice of the facts claimed and the issues to be tried. . . . The fundamental purpose of these pleading requirements is to prevent surprise of the defendant. . . . The purpose of these general pleading requirements is consistent with the notion that the purpose of specific pleading requirements . . . is to promote the identification, narrowing and resolution of issues before the court." (Citations omitted; internal quotation marks omitted.) *Todd* v. *Glines*, 217 Conn. 1, 9–10, 583 A.2d 1287 (1991).

"[If] the plaintiffs' prayer for relief seeks not only a

declaratory judgment but also general equitable relief, the plaintiffs are entitled to invoke the long arm of equity to receive whatever relief the court may from the nature of the case deem proper. Any relief can be granted under the general prayer which is consistent with the case stated in the complaint and is supported by the proof provided the defendant will not be surprised or prejudiced thereby." (Internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 308–309, 709 A.2d 1089 (1998); see also *Total Aircraft, LLC* v. *Nascimento*, 93 Conn. App. 576, 580–81, 889 A.2d 950, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006). Nevertheless, "[a]n equitable proceeding does not provide a trial court with unfettered discretion. The court cannot ignore the issues as framed in the pleadings." *Warner* v. *Brochendorff*, 136 Conn. App. 24, 34, 43 A.3d 785, cert. denied, 306 Conn. 902, 52 A.3d 728 (2012).

In the present case, the pleadings were not framed in a way that apprised the company that the court might order a remedy that would require it to pay the individual defendants.[16] The initial complaint did not name the company as a defendant. The plaintiffs only later cited in the company as a defendant in response to the motion to strike filed by the individual defendants. That motion focused on the court's inability to issue a declaratory judgment in the absence of the company.[17] The individual defendants did not argue that the company was a necessary party with respect to the court's ability to grant any of the other relief requested. Even when broadly construed, the amended complaint did not contain any allegations against the company. See *Provenzano* v. *Provenzano*, supra, 88 Conn. App. 225 ("pleadings must be construed broadly and realistically" [internal quotation marks omitted]).

In response to the company's motion to strike for failure to state a cause of action against the company, the plaintiffs argued that the complaint "merely identifies [the company] as an additional defendant" because the company is "a mere stakeholder upon the plaintiff's claims, including for declaratory relief . . . ." The plaintiffs did not argue that their complaint sought relief from the company. The only reference to the company in the plaintiffs' prayer for relief was their request for "a determination as to whether or not the stock of [the company] is subject to preemptive rights notwithstanding that said stock was acquired from treasury shares." The other requested remedies were for declaratory judgments concerning the disposition of the stock in question and the general prayer for "[s]uch legal or equitable relief as the court deems appropriate." Similarly, the individual defendants' answer, affirmative defenses, and counterclaim did not seek any relief from the company.

Although "[a]ny relief can be granted under the gen-

eral prayer [for equitable relief] which is consistent with the case stated in the complaint and is supported by the proof"; (internal quotation marks omitted) *Pamela B.* v. *Ment*, supra, 244 Conn. 308; "[t]he court cannot ignore the issues as framed in the pleadings." *Warner* v. *Brochendorff*, supra, 136 Conn. App. 34. Here, the court ordered equitable relief that was inconsistent with the issues as framed in the pleadings and inconsistent with the court's finding that Bosco, Parillo, and Warner engaged in self-dealing, resulting in unfair surprise to the company.[18] Throughout the trial, the attorneys and the court relied "on the statement of issues as set forth in the pleadings"; (internal quotation marks omitted) *Abdo* v. *Abdulrahman*, supra, 144 Conn. App. 581; which did not involve any potential wrongdoing on the part of the company.

Nor is there anything in the record that indicates that the parties litigated as if the court might order the company to reimburse the individual defendants. See *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 575 ("a court may, despite pleading deficiencies, decide a case on the basis on which it was actually litigated"). The conduct of the attorneys and the court during and immediately following the trial was consistent with the pleadings, in that they did not act as if the parties had made any allegations against or sought relief from the company. At the start of the trial, the plaintiffs maintained that they were "not adverse to the [company]." The individual defendants did not indicate that they were adverse to the company or that they would later seek relief from the company. The court acknowledged the company's right to participate so that it could "protect [its] interest," and, because the company had no reason to believe its interests would be adversely affected, it acted accordingly. For instance, the company had no reason to file any counterclaims, present any evidence, or cross-examine any of the witnesses. After attending the morning of the first day of trial, Attorney Block requested to be released from the remainder of the trial because he did not intend to take an "active role in the litigation." The parties did not object, and the court released him. Throughout the trial, the parties made no allegations against the company.

Immediately following trial, the plaintiffs regained control of the company, causing Attorney Block to withdraw as counsel for the company. The plaintiffs moved to reopen the evidence, arguing that the reorganization provided them with access to financial information that had "been concealed or unknown to the plaintiffs . . . ." Following a hearing, at which the company was not represented by legal counsel, the court denied the plaintiffs' motion, reasoning that the company's financial conditions were not "of a substantive or material nature."[19] This denial, in addition to the conduct of the parties and the court during the trial, further support

the contention that the court's order surprised the company, particularly in light of the language the court used in its memorandum of decision regarding the trial.

As the court emphasized in its memorandum of decision, the company and "Bosco, Jr., are named as defendants in count one only and only for the purpose of notice." As with the company, the parties did not assert any allegations against Bosco, Jr.[20] Bosco, Jr., had been named as a defendant so that he could receive notice of the proceedings and not for the purpose of being bound by any court order. By classifying both the company and Bosco, Jr., as defendants "only for the purpose of notice," the court implied that the company, likewise, would not be bound by any order without the opportunity to be heard. Consistent with the absence of any allegations against the company in the pleadings, the parties' conduct at trial, and the court's classification of the company as a defendant for notice purposes, the court did not find that the company committed any wrongdoing.

In its memorandum of decision, the court also found that the individual defendants violated the plaintiffs' preemptive rights and that Bosco, Parillo, and Warner engaged in self-dealing by awarding themselves bonuses in connection with the Dube transaction. The court concluded that the plaintiffs were entitled to equitable relief and requested that the parties submit proposed remedies. Specifically, the court noted that "[a]side from the form of the remedy, there are questions concerning whether payment or reimbursement by the plaintiffs and/or to the defendants will be required and, if so, at what per share price." Although the company was named as a defendant, the court observed that the company was a party for notice purposes only and did not indicate that the proposed remedies should address what role the company should play, if any, at the remedy stage.

Nevertheless, in response to the court's request for proposed remedies, Parillo and Polivy proposed that the court order the company to reimburse the individual defendants. This was the first mention of that potential remedy, essentially asking the court to ignore the general rule that "the judgement cannot exceed the claims pleaded, including the prayer for relief." *Todd* v. *Glines*, supra, 217 Conn. 9. In opposing this proposed remedy, the plaintiffs' counsel argued that, "the idea of Your Honor just being able to award money or order money from the [company] to be paid to one of the defendants without the [company] being named and given an opportunity to appear in regard to those issues . . . would be improper in this case. . . . [T]here were no allegations by any of the defendants against the [company] saying that in the event this court decides to somehow order a rescission, what, if anything, the [company's] obligations to these individuals would be."[21] Polivy's

counsel replied that the court had "decided to provide equitable relief, [a]nd in providing equitable relief the court is free to really fashion any kind of remedy that does equity," including ordering the reimbursement to the individual defendants.

Although the court had the authority to provide equitable relief by virtue of the plaintiffs' general prayer for equitable relief, "an equitable proceeding does not provide a trial court with unfettered discretion" to order relief against a party who was without notice of the claims against it. *Warner* v. *Brochendorff*, supra, 136 Conn. App. 34. "The court cannot ignore the issues as framed in the pleadings." Id. The parties' pleadings did not frame the issues in terms of the company's wrongdoing or obligation to provide them with a remedy. Here, the first mention of this potential remedy did not occur until the court held its hearing on proposed remedies in December, 2015. The issuance of an order of relief against the company, in the absence of notice of a claim against it, is inconsistent with the fundamental purpose of pleading requirements, namely, "to prevent surprise of the [party] . . . ." *Todd* v. *Glines*, supra, 217 Conn. 10.

With no prior notice of any claims against it, the company was forced to have counsel file an appearance on its behalf and a motion for reconsideration on January 26, 2016, fifteen days after the court's order of relief. In its motion, the company reminded the court that it had been "named as a party only for notice purposes in the litigation" and that "[n]o claims were made against [the company]." The company also reminded the court of the plaintiffs' "motion to reopen the evidence so as to present [the company's] grave financial state," which the court denied. The company argued that it was not in a financial situation where it could obey the court's order and that "reconsideration is warranted to allow [the company] to address what is effectively a claim and request for relief directed to it." As the plaintiffs' counsel argued at a hearing on the motion, "without a complaint against [the company], without allegations, [the company] never had a chance to put on its own evidence, to put on a claim of recoupment or setoff or counterclaim." Nevertheless, the court denied the company's motion, stating that "the relief sought did include equitable relief and that's the way the order was fashioned. Also, with respect to notice for [the company] in the case, for notice purposes, and there was actual and constructive notice."

Notice of the ongoing litigation, however, is distinct from notice that the litigants are making a claim against or seeking relief from a party. As evidenced by the pleadings as well as the conduct of the parties, the company had no notice that such relief would enter against it. Since May 5, 2014, when Attorney Block was excused during the first day of evidence, the parties

had effectively acknowledged that the presence of counsel for the company was unnecessary given the posture of the case. Given that the company relied on the state of the pleadings and opted not to participate in the trial, we conclude that the court did not have the authority to order relief against the company. Accordingly, further proceedings are necessary.[22]

The judgment is reversed only as to the court's order that the company reimburse the present owners of the Dube shares and the case is remanded for further proceedings according to law. The appeal is dismissed as to the plaintiffs.

In this opinion the other judges concurred.

[1] The company was originally named as a defendant in this action but thereafter came under the control of the plaintiffs. The plaintiffs also appealed from the judgment of the trial court. At oral argument before this court, they conceded that they lacked standing to bring this appeal. See, e.g., *State* v. *Long*, 268 Conn. 508, 531–32, 847 A.2d 862 (setting forth test for aggrievement), cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). We agree that they lack standing and, accordingly, dismiss the appeal as to the plaintiffs.

[2] Warner had purchased one of the 141 shares and was named as a defendant in the plaintiffs' complaint. Warner died during the pendency of the case, and the plaintiffs withdrew the complaint as to him after the court rendered judgment but before it ordered the remedy at issue.

[3] The plaintiffs also named Robert J. Bosco, Jr., as a defendant for notice purposes only, as discussed more fully in footnotes 7 and 20 of this opinion. We refer to him in this opinion as Bosco, Jr.

[4] Jeffrey Lynn and Parillo attended as observers.

[5] On cross-examination at trial, Bosco could not explain how the board had determined the amount of each bonus, instead stating that the bonuses equaled the first installments by coincidence, because it was expedient that they be the same amount, and because the board felt that these amounts were appropriate. Warner, in response to being asked whether he had paid "for that one share of stock with cash," testified, "[n]o, I was given a bonus for that."

[6] The company nevertheless contends, in its brief to this court, that "the burden should have been on Polivy to assert a claim against [the company] for the return of [the] funds" he had paid for his shares.

[7] Between January and April, 2012, four of the company's other shareholders directly sold their shares to Bosco and Parillo (direct transactions). Following these transactions, the company's remaining shareholders were Jack Lynn, Jeffrey Lynn, Bosco, Bosco, Jr., Parillo, Polivy, and Warner. As noted in footnote 3 of this opinion, Bosco, Jr., was named as a defendant for notice purposes only. As a shareholder, Bosco, Jr., had an interest in the proceedings but because he had not "purchased any of the disputed shares," neither party made allegations against him or called him as a witness at trial. See also footnote 20 of this opinion.

[8] The plaintiffs later filed a second amended complaint, which is the operative complaint in this case. It differed solely in the addition of a sentence clarifying that the transactions that had occurred between the four shareholders and Bosco and Parillo had occurred directly between them rather than through the company.

[9] Counsel for the individual defendants also withdrew his appearance because of the conflict created when Warner realigned himself with the plaintiffs.

[10] The court found for the plaintiffs on both counts of the individual defendants' counterclaim. Bosco filed an appeal from that judgment, which this court dismissed for lack of a final judgment because as of that time, the trial court had made only a finding of liability.

[11] The court reasoned that this issue previously had been decided by Judge Wagner on the individual defendants' January, 2013 motion to strike, and that, as that ruling was on a matter of law and was not clearly erroneous, it became the law of the case.

[12] In June, 2014, following the close of evidence, the plaintiffs in the present case (*Lynn I*) initiated *Lynn II* against the individual defendants, as a

derivative action on behalf of the company. *Lynn* v. *Bosco*, supra, Superior Court, Docket No. CV-14-6063040-S. We properly may take judicial notice of that pleading. See *State* v. *Joseph*, 174 Conn. App. 260, 268 n.7, 165 A.3d 241, cert. denied, 327 Conn. 912, 170 A.3d 680 (2017); see also *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 527, 294 A.2d 633 (1972) ("[t]here is no question . . . concerning our power to take judicial notice of files of the Superior Court, whether the file is from the case at bar or otherwise"); *Folsom* v. *Zoning Board of Appeals*, 160 Conn. App. 1, 3 n.3, 124 A.3d 928 (2015) (taking "judicial notice of the plaintiff's Superior Court filings in . . . related actions filed by the plaintiff"). The plaintiffs' initial complaint alleged, in part, that the individual defendants engaged in self-dealing in connection with the Dube and direct transactions, to "the special loss and damage of the [company]."

In July, 2014, the individual defendants moved to transfer *Lynn II* from the judicial district of Hartford to the judicial district of Middlesex or, in the alternative, to the judicial district of New Britain for consolidation with *Lynn I*. The individual defendants also moved to stay *Lynn II*, pending the trial court's decision in *Lynn I*. In October, 2014, the court, *Miller*, *J.*, transferred *Lynn II* to the judicial district of New Britain but did not consolidate it with *Lynn I*, and also stayed *Lynn II* until thirty days following the decision in *Lynn I*.

In May, 2015, after the plaintiffs became majority shareholders of the company, they cited in the company as an additional party plaintiff in *Lynn II*, so that it could pursue the action directly. The plaintiffs remained plaintiffs in *Lynn II* until they withdrew from the action in August, 2017, leaving the company as the sole plaintiff.

The company has since amended the complaint in *Lynn II* to allege, essentially, that the individual defendants (1) breached their fiduciary duties to the company by self-dealing in connection with the Dube and direct transactions and by otherwise manipulating the company's affairs, (2) assisted each other in breaching their fiduciary duties, (3) were unjustly enriched, and (4) violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

[13] Notably, in May and June, 2017, Polivy and Bosco moved for summary judgment in *Lynn II*, arguing that *Lynn II* "is barred by the doctrine of res judicata" because "[a]ll claims advanced in *Lynn II* . . . are from the same transaction and were or could have been litigated in *Lynn I*." In September, 2017, the court, *Moll*, *J.*, denied Polivy's and Bosco's motions, noting that "[the company] was named as a defendant for notice purposes only" and finding that "Polivy and Bosco . . . failed to demonstrate that the Lynns as then minority shareholders and [the company] were in privity at the relevant time in *Lynn I* . . . ."

[14] Although an appearance was filed in this appeal on behalf of Parillo, that appearance was withdrawn on July 13, 2017. Parillo has not filed a brief in the present appeal.

[15] Bosco claims, in his appellate brief, that this court should dismiss this appeal for lack of aggrievement and, alternatively, as moot. Before reaching the merits of the company's appeal, we must first address these claims, as they relate to the subject matter jurisdiction of this court. *Council* v. *Commissioner of Correction*, 286 Conn. 477, 487, 944 A.2d 340 (2008); *Seymour* v. *Seymour*, 262 Conn. 107, 110, 809 A.2d 1114 (2002).

First, Bosco claims that the plaintiffs and the company were not aggrieved because in "determining the ownership of the Dube shares of [the company's] stock," the plaintiffs got the relief they requested. As previously noted, at oral argument before this court, the plaintiffs' counsel conceded that the plaintiffs do not have standing. See footnote 1 of this opinion. We reject this claim as it applies to the company because the company has demonstrated "a possibility . . . that some legally protected interest . . . has been adversely affected" by the court ordering it to pay the individual defendants. (Internal quotation marks omitted.) See *State* v. *Long*, supra, 268 Conn. 531–32 (setting forth test for standing's aggrievement requirement).

Second, Bosco claims that the company paid him the amount ordered by the court and that this payment constituted a satisfaction of judgment that renders this appeal moot. "[T]he filing of a satisfaction of judgment does not render an appeal moot when there is a possibility of restitution or reimbursement . . . ." (Citation omitted.) *G Power Investments*, *LLC* v. *GTherm*, *Inc.*, 141 Conn. App. 551, 561, 61 A.3d 592 (2013). Here, as the company's counsel argued at oral argument, such actions as the company's participation in preargument conferences and filing of a brief indicate that the company did not intend to abandon this appeal. Because this court

could order restitution, this appeal is not moot. See, e.g., *Wells Fargo Bank, NA* v. *Cornelius*, 131 Conn. App. 216, 220, 26 A.3d 700, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011). Additionally, we are mindful of the fact that the court's order of damages levied on a party against whom no allegations were made, if left unresolved by this court, would inject further uncertainty upon the pending litigation in *Lynn II*, where the court already has denied motions for summary judgment on the issue of res judicata. See footnote 13 of this opinion.

[16] In addition to claiming that the court exceeded its authority in entering an order against the company when none of the pleadings contained any allegations against or sought relief from the company, the company claims that the court's entry of the order violated its procedural due process rights to notice and an opportunity to be heard. With respect to this alternative claim, the company argues that it lacked "notice that relief could be entered against it in the form of required payments to the defendants" because "[the company] was only a nominal party against whom no claims had been made" and no party "had asserted a prayer for relief seeking any relief from" the company. Although we agree with the company as to its principal claim and, thus, need not reach this alternative ground, these claims nevertheless underscore the fact that pleading requirements are, at their core, a notice issue. See, e.g., *Todd* v. *Glines*, supra, 217 Conn. 9–10; *KMK Insulation, Inc.* v. *A. Prete & Son Construction Co.*, supra, 49 Conn. App. 525.

[17] In cases in which the plaintiffs seek a declaratory judgment, "[a]ll persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof." Practice Book § 17-56 (b). "This rule is not merely a procedural regulation. It is in recognition and implementation of the basic principle that due process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard." (Internal quotation marks omitted.) *Kolenberg* v. *Board of Education of Stamford*, 206 Conn. 113, 124, 536 A.2d 577, cert. denied, 487 U.S. 1236, 108 S. Ct. 2903, 101 L. Ed. 2d 935 (1988) (interpreting Practice Book (1988) § 390 [now § 17-55] which provided "that the court will not render a declaratory judgment 'unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof' ").

[18] On appeal, the company claims, in the alternative, that the remedy was inequitable in light of the court's finding that Bosco, Parillo, and Warner engaged in self-dealing by awarding themselves bonuses to pay for the Dube shares. "An equitable award may be found to be error only if it is based on factual findings that are clearly erroneous . . . or if it is the result of an abuse of discretion." (Citation omitted.) *LaCroix* v. *LaCroix*, 189 Conn. 685, 689–90, 457 A.2d 1076 (1983). Because we reverse the judgment on other grounds, we need not address whether the court abused its discretion in fashioning this order.

[19] Polivy and Bosco, in their respective briefs to this court, argue that the individual defendants were "entitled to a return of the purchase price paid for [the Dube] stock" because "[t]he plaintiffs . . . failed to present any evidence to establish that [the company] . . . would suffer damage if it were found liable for the return of the funds . . . ." In making this argument, Polivy and Bosco omit the undisputed fact that the individual defendants had been in control of the company throughout the trial and that after the plaintiffs gained control of the company, the court denied the plaintiffs' motion to reopen the evidence because the court did not consider the company's finances to be material. The court's unwillingness to hear evidence of the company's finances demonstrates that the court did not anticipate taking the company's finances into account when fashioning its order. Additionally, Polivy and Bosco's argument underscores the importance of the parties receiving notice of the claims to be decided so that they can present evidence relevant to those claims.

Notably, the court in *Lynn II* heard argument from Polivy and Bosco that res judicata barred the company's claims because "[a]ll claims advanced in *Lynn II* . . . are from the same transaction and were or could have been litigated in *Lynn I*." As that court found, and consistent with this court's holding herein, the company was never a plaintiff in this case or in privity with the plaintiffs and, therefore, had no opportunity to pursue these claims.

[20] On the second day of the trial, the following colloquy occurred:

"The Court: . . . Counsel still in agreement with regard to the court's excusing Attorney Block for [the company]?

"[The Defendants' Counsel]: Yes, Your Honor.

"[The Plaintiffs' Counsel]: Yes, Your Honor.

"The Court: All right. Anything before we begin?

"[The Defendants' Counsel]: Along those same lines, I just wanted to point out . . . Bosco, Jr., was named as a defendant and not identified by either party as a witness. We haven't had him here because he owns three shares and he didn't purchase any of the disputed shares.

"[The Plaintiffs' Counsel]: The allegations are the same in the complaint. It was merely to give him notice of the proceedings because he was a stockholder and in theory has an interest in the proceedings, but we didn't make any allegations against . . . Bosco, Jr. He's not required as far as we're concerned."

[21] The plaintiffs' counsel suggested that, in light of the court's finding that Bosco, Parillo, and Warner paid for these shares with bonuses they received through self-dealing and of issues outstanding in *Lynn II* concerning the propriety of Polivy's legal fees, the individual defendants should pursue the company directly for the amount each paid for the Dube shares.

[22] We also refer this matter to the chief administrative judge of the civil division to consider transfer to the Complex Litigation Docket for consolidation with the litigation pending in *Lynn II*.