******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILLIAM L. ROACH *v.* TRANSWASTE, INC.
## (AC 43861)

Bright, C. J., and Suarez and Vertefeuille, Js.

*Syllabus*

The plaintiff sought damages from the defendant for the alleged wrongful termination of his employment in violation of statute (§ 31-51q). The plaintiff, who was employed as a truck driver by the defendant, alleged that his employment was terminated after raising safety complaints to the defendant. After a jury trial, the court rendered judgment for the plaintiff in accordance with the jury's verdict. The plaintiff thereafter filed a motion for attorney's fees, seeking an amount calculated pursuant to the lodestar method, in which the number of hours expended by counsel on the litigation and counsel's hourly rate are used to determine reasonable attorney's fees. The court, however, awarded attorney's fees on a one-third contingency basis. The court concluded that the plaintiff's fee agreement with his counsel was ambiguous because the agreement stated both that the law firm's employment was on a contingency fee basis and that time would be kept on an hourly basis, and, in the event a recovery is made and attorney's fees are awarded, the law firm shall receive whichever amount was greater. The plaintiff appealed and the defendant filed a cross appeal, claiming that the court erred by awarding attorney's fees to the plaintiff, by failing to set aside the jury's award of damages, by rendering judgment in favor of the plaintiff, and by providing an incorrect charge to the jury. *Held*:

1. The trial court erred by failing to apply the lodestar method in calculating the amount of attorney's fees awarded to the plaintiff: in resolving the alleged ambiguity in the fee agreement, the court, with no further explanation, awarded attorney's fees in the amount of one third of the damages that the plaintiff received; the fee agreement contemplated both the one-third contingency and lodestar methods of calculating attorney's fees but clearly stated that the law firm shall receive as its fee whichever was the greater of the two, and, because the court failed to apply the provision of the fee agreement under which the plaintiff sought an award of attorney's fees and failed to consider that such an award may be greater than one based solely on the jury's award of damages, the court's award was improper and a new hearing was required.

2. The defendant could not prevail on its claim that the trial court erred in awarding any attorney's fees to the plaintiff, which was based on its claim that the plaintiff failed to satisfy the legal standard for granting attorney's fees and did not raise or preserve his claim in his complaint or at trial: the plaintiff obtained a judgment in his favor and was awarded damages, § 31-51q provides for reasonable attorney's fees should a party prevail in an action brought under that statute, and the plaintiff included a claim for attorney's fees in the prayer for relief in his complaint; moreover, the defendant did not cite any requirement that a claim for attorney's fees must be made in the body of a complaint to constitute sufficient notice.

3. The defendant's claim that the trial court erred by failing to set aside the jury's award of damages because it was not supported by sufficient evidence was unavailing; notwithstanding the defendant's claim that the plaintiff failed to provide evidence of his lost wages, the plaintiff's testimony constituted sufficient evidence to support the jury's verdict.

4. The defendant could not prevail on its claim that the trial court erred by rendering judgment in favor of the plaintiff because there was no evidence to support the jury's conclusion that the plaintiff's employment had been terminated for filing safety complaints; the plaintiff testified that he believed his employment was terminated because he could not say what was on his mind, he made complaints about safety violations and his employment was terminated shortly thereafter, and he felt that he was discriminated against because the employment of other individuals, despite those individuals taking various actions, including stealing and smashing up trucks, was not terminated.

5. The trial court correctly instructed the jury concerning the applicable standard of proof; the defendant, in arguing that the court's use of the term "substantially motivating factor" in its instructions discussing the reason for the plaintiff's discharge rendered the charge vague, confused the standard for causation with the applicable burden of proof, which the court clearly set forth in its charge, and this court concluded that it was not reasonably probable that the jury was misled.

Argued November 18, 2021—officially released February 15, 2022

*Procedural History*

Action to recover damages for, inter alia, the allegedly wrongful termination of the plaintiff's employment, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Noble, J.*; verdict and judgment for the plaintiff; thereafter, the court, *Noble, J.*, awarded the plaintiff attorney's fees, and the plaintiff appealed and the defendant cross appealed to this court. *Reversed in part*; *further proceedings*.

*Zachary T. Gain*, with whom, on the brief, was *James V. Sabatini*, for the appellant-cross appellee (plaintiff).

*Glenn L. Formica*, for the appellee-cross appellant (defendant).

*Opinion*

VERTEFEUILLE, J. This appeal arises from an employment retaliation action brought by the plaintiff, William L. Roach, against the defendant, Transwaste, Inc. In his two count complaint, the plaintiff alleged that his employment was wrongfully terminated in violation of public policy and that this termination violated General Statutes § 31-51q.[1] After a jury trial, the court rendered judgment in accordance with the jury's verdict in favor of the plaintiff. The plaintiff thereafter filed a motion for attorney's fees seeking an amount calculated pursuant to the lodestar method.[2] The court, however, awarded the plaintiff attorney's fees on a one-third contingency basis. The plaintiff appealed, claiming that the court erred by failing to apply the lodestar method in calculating the amount of the award of attorney's fees. The defendant filed a cross appeal, claiming that the court erred by (1) awarding any attorney's fees to the plaintiff, (2) failing to set aside the jury's award of damages because it was not supported by sufficient evidence, (3) rendering judgment in favor of the plaintiff because there was no evidence to support the jury's conclusion that the plaintiff's employment had been terminated for filing safety complaints, and (4) providing an incorrect charge to the jury. We agree with the plaintiff and reverse the judgment of the court with respect to the calculation of attorney's fees. We affirm the judgment in all other respects.

The following facts and procedural history, as set forth in the court's memorandum of decision deciding various postjudgment motions filed by the parties, are relevant to our resolution of the claims of both parties on the appeal and the cross appeal. "The plaintiff possesses a commercial driver's license and was employed as a truck driver by the defendant from 2013 through 2015. The defendant is a trucking company located in Wallingford . . . that specializes in the transportation and disposal of special and hazardous waste. The owner and president of the defendant is John Barry. The plaintiff testified that he was terminated by Barry after raising safety complaints to the defendant.

"In July, 2015, the plaintiff complained of a problem with the steering link [in his tractor] while driving in Pennsylvania. Barry denied the plaintiff's request to buy a replacement and ordered the plaintiff to drive back to Wallingford. [The plaintiff testified that] [t]his was unsafe because the failed steering link, one of two, controlled the steering of one of the two front tires [of his tractor]. The next day [the plaintiff] was told not to show [up] for work . . . . [H]e [later] found out that his tractor had been driven, unrepaired, by another driver. The plaintiff was not paid for the day he missed. In August, 2015, while in Pennsylvania, a trailer [the plaintiff] was driving suffered a blown tire. Barry denied the plaintiff's requests to buy a replacement tire despite

[his] expression of concern that it was unsafe to drive the loaded trailer without the normal two tire combination at the end of the axle. The plaintiff was nevertheless ordered to complete his trip with only one tire rather than the two tires with which he had been driving. Another incident occurred in August, 2015, in which the plaintiff complained over the course of [several] weeks of a problem with vibration in his tractor . . . . [The plaintiff] was told by Barry that [his tractor] had been inspected, there was nothing wrong with it and [that] he should continue to drive it. Ultimately, the plaintiff refused to drive the tractor and after continued complaints was told to take it to [a] dealer, who diagnosed [the issue] as [a] failure of the universal joint.

"On November 10, 2015, one tire of a two tire assembly on the plaintiff's tractor blew. [The plaintiff] [pleaded] with the office manager to buy a new tire . . . [but was told] that Barry did not like to buy tires on the road. Ultimately, [the office manager] told the plaintiff to buy a used tire, and he did so. Finally, on November 16, 2015, the plaintiff noticed [the] check engine light [in his tractor] that appeared approximately twenty miles after he left the defendant's location in the early morning hours [at the] start [of] a trip. [The plaintiff] returned to the defendant's garage and left the tractor there with the engine running so that the mechanic would be able to diagnose the problem. The plaintiff locked the truck before he left the defendant's yard and returned home. He was fired [later] that day without being given a reason. Barry testified at trial that he terminated the plaintiff because it was unsafe to permit the engine [of his tractor] to idle for . . . several hours.

"The plaintiff testified that he was out of work for about six months. [While employed by the defendant] [h]e was paid by the mile at a rate of [forty-six cents] per mile and he averaged a little [more] than 2000 miles per week. He also testified that during the two years he worked for the defendant he drove [a total of] approximately 230,000 miles. At the conclusion of the plaintiff's case, the defendant moved for a directed verdict. The court denied the motion. The jury [then] returned a verdict [in favor of the plaintiff] for $24,288."

After the jury returned its verdict, the defendant filed a motion for judgment notwithstanding the verdict, a motion for remittitur, and a motion to set aside the verdict. The court denied each of the defendant's motions. The plaintiff filed a motion for attorney's fees, seeking reasonable fees calculated pursuant to the lodestar method. See footnote 1 of this opinion. The court granted the plaintiff's motion but rejected the use of the lodestar method, and instead awarded the plaintiff attorney's fees in the amount of $8087.90, or one third of the award of damages in his favor. Additional facts and procedural history will be set forth as necessary.

I

THE PLAINTIFF'S APPEAL

The plaintiff claims that, because he was a prevailing party under § 31-51q, he should have been awarded reasonable attorney's fees calculated pursuant to the lodestar method, as required by his fee agreement with his counsel. Specifically, the plaintiff argues that his fee agreement with his counsel unambiguously provided that he was entitled to recover as attorney's fees "33 1/3% of the total recovered" or attorney's fees based on the hourly time records of counsel billed at counsel's hourly rate, "*whichever is the greater of the two*." (Emphasis added.) He argues that the court's failure to award attorney's fees pursuant to the fee agreement was an abuse of discretion. In response, the defendant argues that the plaintiff is not entitled to attorney's fees at all, and that, in the alternative, the court properly awarded attorney's fees to the plaintiff in accordance with terms of the fee agreement. We agree with the plaintiff.

We begin by setting forth the applicable standard of review. "It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Noel* v. *Ribbits*, *LLC*, 132 Conn. App. 531, 534–35, 35 A.3d 1078 (2011).

In the present case, in addressing the plaintiff's motion for attorney's fees, the court concluded that the plaintiff's fee agreement was ambiguous because it states both that the "employment is on a contingency fee basis" and that "[t]ime shall nevertheless be kept on an hourly basis [and] in the event that a recovery is made and attorney['s] fees are awarded by statute or a court . . . then the law firm shall receive the amount as its legal fee, *whichever is the greater of the two*." (Emphasis added; internal quotation marks omitted.) In resolving this alleged ambiguity, the court, with no further explanation, opted to award the plaintiff attorney's fees in the amount of $8087.90, or one third of the damages that he received. In resolving this claim, we conclude that the relevant facts of *Noel* are nearly identical to those in the present case. Accordingly, our decision in that case controls our resolution of the plaintiff's claim in the present case.

In *Noel*, an employment discrimination case, the plaintiffs' fee agreements with their attorneys stated: "In the event of a successful resolution of the case, I agree that my attorneys shall be compensated at the rate of one-third of the entire settlement or judgment I receive in connection with my claims *or an award of reasonable attorney's fees, whichever is greater.*" (Emphasis in original; internal quotation marks omitted.) *Noel* v. *Ribbits, LLC*, supra, 132 Conn. App. 534. After a jury trial, the court rendered judgment in part in favor of the plaintiffs, awarding one plaintiff $1600 in economic damages and the other plaintiff no damages. Id., 533. The plaintiffs then filed a motion seeking an award of reasonable attorney's fees. Id. The court denied the motion as to the plaintiff who did not recover any monetary damages and awarded the plaintiff that did receive $1600 in damages attorney's fees in the amount of $533.33, or one third of the award in her favor. Id., 533–34. In its memorandum of decision, the court stated that it based its award on the one-third contingency provision of the fee agreements. Id., 533. The plaintiffs then appealed, claiming that "the court improperly based its award of attorney's fees solely on the one-third contingency provision of their fee agreements to the exclusion of other pertinent language in their fee agreements." Id., 534. This court reversed the judgment of the trial court, holding that its award of attorney's fees was improper because, "[i]n fashioning [the] award, [it] did not consider the provision in the agreements for a reasonable award that might be greater than one based solely on the jury's award of damages." Id., 535.

In the present case, as previously set forth in this opinion, the fee agreement between the plaintiff and his attorney contemplated both the one-third contingency and lodestar methods of calculating attorney's fees but clearly stated that "the law firm shall receive . . . as its legal fee . . . whichever is the greater of the two." As in *Noel*, the court in the present case, "in considering the plaintiffs' claims for attorney's fees . . . limited its consideration to [only one] provision of the fee [agreement]." *Noel* v. *Ribbits, LLC*, supra, 132 Conn. App. 535. Because the court failed to apply the provision of the fee agreement under which the plaintiff sought an award of attorney's fees and failed to consider that such an award may be greater than one based solely on the jury's award of damages; see, e.g., id.; we conclude that the court's award was improper. Furthermore, because the court did not determine the reasonableness of the plaintiff's claimed attorney's fees based on the hours spent by the attorneys at their hourly rates, a new hearing on the plaintiff's motion for an award of attorney's fees is required, employing the lodestar method.

## II

## THE DEFENDANT'S CROSS APPEAL

In its cross appeal, the defendant claims that the court erred by (1) awarding any attorney's fees to the plaintiff, (2) failing to set aside the jury's award of damages because it was not supported by sufficient evidence, (3) rendering judgment in favor of the plaintiff because there was no evidence to support the jury's conclusion that the plaintiff's employment had been terminated for filing safety complaints, and (4) giving an incorrect charge to the jury concerning the applicable standard of proof. We address each of the defendant's claims in turn.

A

The defendant's first claim is that the court erred by awarding any attorney's fees to the plaintiff. Specifically, the defendant argues that the plaintiff (1) failed to satisfy the legal standard for granting attorney's fees, and (2) "did not raise or preserve his claim for attorney's fees in [his] . . . complaint and did not preserve his claim at trial." In response, the plaintiff argues that (1) he satisfied the legal standard for awarding attorney's fees because he had a valid "hybrid fee" agreement with his attorney, and (2) his complaint "clearly made a claim for attorney's fees in the prayer for relief." We agree with the plaintiff.

We first set forth the applicable legal standard. "Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which our review is plenary. . . . Generally, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings. . . . Pleadings have an essential purpose in the judicial process. . . . For instance, [t]he purpose of the complaint is to put the defendants on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . [T]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter. . . . Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant. . . . [A]ny judgment should conform to the pleadings, the issues and the prayers for relief. . . . [G]enerally . . . the allegations of the complaint provide the measure of recovery, and . . . the judgment cannot exceed the claims pleaded, including the prayer for relief." (Citations omitted; internal quotation marks omitted.) *Lynn* v. *Bosco*, 182 Conn. App. 200, 213–15, 189 A.3d 601 (2018). Accordingly, the question before us is whether the court properly found that the plaintiff, through his complaint, put the defendant on sufficient notice of his claim for attorney's fees.

The plaintiff instituted the present action against the

defendant pursuant to § 31-51q, which provides in relevant part: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and *for reasonable attorney's fees as part of the costs of any such action for damages. . . .*" (Emphasis added.) Additionally, in his prayer for relief in his complaint, the plaintiff clearly included a claim for attorney's fees. The defendant fails to cite any requirement that a claim for attorney's fees must be made in the body of a complaint to constitute sufficient notice. This court has explicitly held that, for purposes of determining sufficiency of notice, the prayer for relief should be considered. See *Lynn* v. *Bosco*, supra, 182 Conn. App. 215. Accordingly, for a party to be awarded attorney's fees pursuant to § 31-51q, that party must succeed on his or her retaliation claim against the employer. In the present case, the court rendered judgment in favor of the plaintiff on his claim after the jury returned its verdict in the plaintiff's favor and awarded him damages. Because the plaintiff succeeded on his claim, his is entitled to an award of reasonable attorney's fees pursuant to § 31-51q, and the defendant's argument fails.

Moreover, the defendant's argument that the plaintiff did not properly raise or preserve his claim for attorney's fees is easily disposed of because, as the plaintiff argues, he clearly included a claim for attorney's fees in his prayer for relief in his complaint. Accordingly, we conclude that the plaintiff provided the defendant with sufficient notice of his claim for attorney's fees, and reject the defendant's claim that the court erred by awarding attorney's fees to the plaintiff.

B

The defendant's second claim is that the court erred by failing to set aside the jury's award of damages because the verdict was not supported by sufficient evidence. Specifically, the defendant argues that the plaintiff "failed to provide any evidence of his claimed lost wages." In response, the plaintiff argues that his testimony at trial constitutes sufficient evidence to support the jury's verdict. We agree with the plaintiff.

After the jury returned its verdict, the defendant filed a motion for remittitur seeking to have the court "remit the award of damages [to the plaintiff] to zero dollars." According to the defendant, remittitur was appropriate because "[t]he [jury's] verdict [was] excessive [and] because . . . [the plaintiff] failed to provide either tan-

gible evidence or even to testify with any specificity [as] to the amount of damages." The court denied the defendant's motion, holding that "the plaintiff provided sufficient evidence that the jury was able to, and did, [use to] arrive at a reasonable estimate of his lost wages." Specifically, the court pointed to the plaintiff's testimony that he was paid forty-six cents per mile, drove approximately 230,000 miles over a two year period, and was out of work for "[a]bout six months."

The court further explained: "The jury found, as indicated on its responses to the jury interrogatories, that the plaintiff was owed for 2200 miles per week at a rate of forty-six cents per mile over a period of twenty-four weeks for a total of $24,288. The jury reasonably and logically reached these conclusions based on a division of 230,000 miles over two years by the number of weeks in two years, 104, to arrive at an estimate of weekly mileage of approximately 2211 miles rounded to the awarded figure of 2200. The latter figure, when multiplied by [forty-six cents] per mile yields a weekly income of $1012. In turn, this number may be multiplied by twenty-four weeks—an estimate of four weeks per month for six months—to arrive at the jury's award of damages in the amount of $24,288. While the calculations so inferred from the testimony and jury interrogatories are not reflective of absolute precision, they nevertheless arrive at a *reasonable estimate derived from the trial evidence*." (Emphasis added.)

We now turn to the applicable standard of review for sufficiency of the evidence. "With respect to appellate review . . . [our Supreme Court has] explained that our review of the trial court's decision [to grant or deny remittitur] requires careful balancing. . . . [T]he decision whether to reduce a jury verdict because it is excessive as a matter of law . . . rests solely within the discretion of the trial court. . . . [T]he same general principles apply to a trial court's decision to order a remittitur. [Consequently], the proper standard of review . . . is that of an abuse of discretion. . . . [T]he ruling of the trial court . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . Even under this deferential standard of review, however, we have not shied away from ordering remittitur when the record failed to support the jury's award of damages." (Citations omitted; internal quotation marks omitted.) *Ashmore* v. *Hartford Hospital*, 331 Conn. 777, 783–84, 208 A.3d 256 (2019).

Considering the record, and our deferential standard of review, we conclude that the court did not abuse its discretion in declining to set aside the jury's award of damages. As we previously set forth in this opinion, there is clear evidence in the record from which the jury could have arrived at its verdict and the amount of the award of damages to the plaintiff. Moreover,

the court, "having observed the trial and evaluated the testimony firsthand, is better positioned . . . to assess . . . the aptness of the award"; id., 783; and the court concluded "that the jury could reasonably and legally have reached the verdict that it did." Accordingly, we reject the defendant's claim.

C

The defendant's third claim is that the court erred in rendering judgment in favor of the plaintiff because there was insufficient evidence to support the jury's conclusion that the plaintiff's employment had been terminated for filing safety complaints. In response, the plaintiff argues that the jury's conclusion was reasonable in light of the plaintiff's testimony "that he felt that his termination was discriminatory . . . [and] that he made complaints about safety violations and was terminated shortly thereafter." (Citation omitted.) We agree with the plaintiff.

We begin with our standard of review. "A party challenging the validity of the jury's verdict on grounds that there was insufficient evidence to support such a result carries a difficult burden. In reviewing the soundness of a jury's verdict, we construe the evidence in the light most favorable to sustaining the verdict. . . . We do not ask whether we would have reached the same result. [R]ather, we must determine . . . whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . If the jury could reasonably have reached its conclusion, the verdict must stand." (Internal quotation marks omitted.) *Wager* v. *Moore*, 193 Conn. App. 608, 616, 220 A.3d 48 (2019).

In the present case, the defendant claims that the plaintiff, through his testimony, was "unable to prove or establish that [the defendant] violated a public policy, much less terminated him because he complained about a violation." The record, however, belies this claim. The plaintiff clearly testified that he believed that his employment was terminated because he could not "really say [what was] on [his] mind," and that "[he felt it was] discriminatory . . . [because] certain people at that job [could] smash up trucks, have tow aways out of state, steal, and [did not] get terminated." Although this testimony, as the trial court stated, "is insufficient to establish directly the grounds for [the plaintiff's] termination," the jury reasonably could have inferred from it that the plaintiff's employment was terminated for filing safety complaints. For this reason, we reject the defendant's claim.

D

The defendant's final claim is that the court erred by giving an incorrect charge to the jury. Specifically, the defendant argues that "[t]he charge was both vague and confusing as to the standard of proof in the case." In

response, the plaintiff argues that the court properly instructed the jury because it precisely followed the relevant statutory language when it charged the jury. We agree with the plaintiff.

"[W]e [now] set forth the standard of review applicable to claims of instructional error. A jury instruction must be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Therefore, [o]ur standard of review on this claim is whether it is reasonably probable that the jury was misled." (Internal quotation marks omitted.) *Allen* v. *Shoppes at Buckland Hills, LLC*, 206 Conn. App. 284, 288–89, 259 A.3d 1227 (2021).

In the present case, the court charged the jury as follows: "In this case, the plaintiff claims that the defendant terminated him in retaliation for reporting issues related to commercial motor vehicle safety, including unsafe conditions relating to overweight loads, mechanical problems including vibration in his [tractor] caused by a missing or damaged universal joint, and his insistence on not driving with a missing tire. The court instructs you that . . . commercial motor vehicle safety involves important public policy issues related to the safety of the public and the plaintiff on public highways. In order to prevail on his claim for wrongful discharge, the plaintiff must then prove by a fair preponderance of the evidence that the defendant terminated him in retaliation for his complaints about the safety issues.

"Wrongful discharge in violation of [§] 31-51q: The statute creates a cause of action for damages to protect [an] employee from retaliatory action—in this case discharge—illegally grounded in the employee's exercise of enumerated constitutionally protected rights. In this case the right at issue is the type of speech. Specifically, speech that implicates serious wrongdoing or threats to health and safety on a matter of public concern. Additionally, the speech must be one in which the employee's interest in the speech outweighs the employer's interest in the efficient performance of services. Therefore, in order for the plaintiff to prove a violation of the statute, he must prove that he engaged in speech which, one, addresses serious wrongdoing or threats to health and safety on a matter of public concern, and, two, the employee's interest in the speech outweighs the employer's interest in promoting the efficient performance of its work. He must also prove,

three, that there was a causal relationship between the protected speech and his discharge, and further that, four, the speech did not substantially or materially interfere with his bond fide job performance or with his working relationship with his employer. . . .

"In this case, the court has found, as a matter of law, that the complaints, that is [the plaintiff's] speech as . . . previously described, [was] on a matter of public concern. The plaintiff must still prove, however, that his complaints addressed serious wrongdoings or threats to health and safety on this matter of public concern. The parties agree that [the plaintiff] was discharged from his employment.

"You must . . . determine whether there was a causal relationship between the protected speech and his discharge. Cause in this case means that his discharge was substantially motivated by his complaints. If you do find that a substantially motivating factor in the plaintiff's discharge was . . . his complaints, you will continue to your deliberations on this claim. If you do not find that his protected speech was a substantially motivating factor in his discharge, you must find in favor of the defendant.

"In order for the plaintiff to recover, you must also find that he has proven that his speech, here the complaints, did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer.

"If you find that the plaintiff has proven all of these factors, and only if you find that the plaintiff has proven all of these factors, you shall find in favor of the plaintiff on this claim."

After the court finished charging the jury, the defendant's counsel objected to the court's use of the term substantially motivating factor. According to the defendant's counsel, the court "should have either not used the term [substantially motivating factor] or better explained the difference between the substantially motivating factor and the burden of proof." The defendant argues that the court's use of the term "substantially motivating factor" rendered the charge "both vague and confusing as to the standard of proof in the case, [i]n effect . . . creat[ing] two standards for the [j]ury to decide." (Emphasis omitted; internal quotation marks omitted.) In making this argument, however, the defendant has confused the standard for causation with the applicable burden of proof, which the court clearly set forth earlier in its charge: "[I]n this case the plaintiff has the burden of proof with respect to his claims . . . . In order to meet his burden of proof, the plaintiff must satisfy you that his claims on an issue are more probable than not. . . . In civil cases such as this one . . . [t]he party who asserts a claim has the burden of proving it by a fair preponderance of the evidence. That is, the

better or weightier evidence must establish that, more probably than not, the assertion is true." Having reviewed the charge in its entirety, we conclude that it is not reasonably probable that the jury was misled because the charge was clear as to the applicable burden of proof and it is highly unlikely that the jury was confused as to the applicable standard of proof. Accordingly, we reject the defendant's claim.

The judgment is reversed only with respect to the award of attorney's fees and the case is remanded for a new hearing on the plaintiff's motion for attorney's fees; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] General Statutes § 31-51q provides in relevant part: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. . . ."

[2] The lodestar method entails "examining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" to calculate an amount of reasonable attorney's fees. (Internal quotation marks omitted.) *A Better Way Wholesale Autos, Inc.* v. *Saint Paul*, 192 Conn. App. 245, 262, 217 A.3d 996 (2019), aff'd, 338 Conn. 651, 258 A.3d 1244 (2021).