SCOTT WARNER *v.* DIANNA BROCHENDORFF
(AC 31453)

Lavine, Alvord and Schaller, Js.

---

Argued March 13—officially released June 5, 2012

*Lorinda S. Coon,* with whom, on the brief, was *Patrick J. Flaherty,* for the appellant-cross appellee (plaintiff).

*William O. Riiska,* for the appellee-cross appellant (defendant).

ALVORD, J. The plaintiff, Scott Warner, brought the present action to foreclose a judgment lien on certain property in Salisbury owned by the defendant, Dianna Brochendorff. The trial court, after reducing the amount of the underlying judgment, rendered a judgment of foreclosure by sale (foreclosure judgment) in favor of the plaintiff. The plaintiff appeals from the foreclosure judgment, claiming that the court improperly permitted a collateral attack on the underlying judgment. The defendant cross appeals from the foreclosure judgment, claiming that the court improperly determined the amount of damages from the evidence submitted at trial. In particular, the defendant claims that the amount awarded by the court as attorney's fees was excessive. We agree with the plaintiff and, accordingly, reverse the foreclosure judgment of the trial court.[1]

The following facts and procedural history are relevant to these appeals. The plaintiff and the defendant are neighbors, owning adjoining properties on a wooded hillside in Salisbury. In 2003, the defendant made arrangements with Curtis Benson to cut down some trees on her property. Benson offered to sell the trees to a logging company and to share 50 percent of the proceeds with the defendant. Pursuant to that agreement, Benson cut trees for four days in November, 2003. The plaintiff subsequently claimed that Benson had cut trees from his property and that Benson had left behind substantial debris that needed to be removed. By letter dated January 8, 2005, the plaintiff notified the defendant that she had destroyed trees on his property and that he intended to take legal action.

The plaintiff filed a complaint in April, 2006 (underlying action), alleging that the defendant unlawfully

---

[1] Because we have determined that the trial court improperly permitted a collateral attack on the underlying judgment, we do not reach the issue presented by the defendant in her cross appeal.

entered upon his land. He alleged that she cut down, damaged or destroyed several trees on his property and that she left behind treetops and other debris from the logging operations. The defendant's actions, he claimed, diminished the value of his property. The defendant filed a pro se appearance in the underlying action, listing her address on the form as 11 East 67th Street, New York, New York. She was subsequently defaulted for her failure to plead.[2] The plaintiff claimed the matter to the trial list, and the court held a hearing in damages on September 17, 2007.

The defendant did not appear at the hearing in damages. The plaintiff presented two witnesses, Stefen Bibro, a licensed arborist and landscaper, and the plaintiff. Bibro testified that the cost of replacing the destroyed trees and removing the logging debris from the plaintiff's property would be $50,000. The plaintiff testified as to the fair market value of his property. At the conclusion of their testimony, the plaintiff's counsel stated that the plaintiff was seeking an award of $50,000, which counsel represented to be the cost of restoring the property to its condition prior to the defendant's trespass. The court, *Pickard, J.*, then issued its ruling: "Based upon the testimony I have heard, I'm going to enter judgment in favor of the plaintiff in the amount of $50,000, plus taxable costs."

The plaintiff filed a certificate of judgment lien in the Salisbury land records on September 24, 2007. On April 21, 2008, the plaintiff commenced the present action to foreclose the judgment lien on the defendant's property. In her answer, the defendant admitted the allegations of the complaint, but she claimed that the judgment

---

[2] "The entry of a default constitutes an admission by the defendant of the facts alleged in the complaint. . . . All that remains following such an entry is for the plaintiff to prove the amount of damages to which it is entitled." (Citation omitted; internal quotation marks omitted.) *Peterson* v. *Woldeyohannes*, 111 Conn. App. 784, 790, 961 A.2d 475 (2008).

lien was not valid. She filed two special defenses, alleging that the judgment in the underlying action was obtained through fraud and was unenforceable because (1) misrepresentations were made to the trial court and (2) she lacked notice as to the underlying proceedings.[3] One week before the trial was scheduled to commence, the plaintiff filed a motion to quash the subpoena duces tecum that had been served on the plaintiff's counsel and a motion in limine, which sought to preclude testimony that would attack collaterally the court's measure of damages in the underlying action. The defendant filed responses to those motions on January 22, 2009.

A trial on the special defenses in the foreclosure action was held on January 22, 23 and 30, 2009. On the first day of trial, the court initially addressed the two motions filed by the plaintiff. With respect to the motion to quash, the plaintiff's counsel argued that any information sought by the defendant as to the measure of damages for cutting trees would be irrelevant to the foreclosure proceeding and to the claim of fraud in the defendant's special defenses.[4] After argument by the defendant's counsel, the court overruled the defendant's objection to the plaintiff's motion to quash the subpoena.

---

[3] In the special defenses filed on September 3, 2008, the defendant alleged:

"FIRST SPECIAL DEFENSE. The judgment in the underlying action that plaintiff now seeks to foreclose was obtained through fraud and is unenforceable in that (1) plaintiff made statements of fact to the court regarding the location and value of the trees and the measure of damages that were false; (2) the statements [were] untrue and known to be so by the plaintiff; (3) the statements were made with the intent of inducing reliance thereon; and (4) the court relied on the statements.

"SECOND SPECIAL DEFENSE. The judgment in the underlying action that plaintiff now seeks to foreclose was obtained through fraud and is unenforceable in that defendant lacked notice relating to the underlying proceedings and the judgment."

[4] Additionally, the plaintiff's counsel claimed that the subpoenaed information was either protected by the attorney-client privilege or constituted attorney work product.

With respect to the motion in limine, the plaintiff's counsel stated that the defendant had disclosed two experts who planned to testify as to the proper measure of damages for cutting trees on the plaintiff's property. The plaintiff's counsel claimed that such testimony was not relevant to the defendant's allegation of fraud in her special defenses. In response, the defendant's counsel argued that the disparity between the damages awarded in the underlying action and the actual damages, as would be proved by her experts, was indicative of fraud. The court declined to rule on the motion in limine at that time, reserving decision until the time that the witnesses testified at trial.[5]

The court heard testimony from several witnesses, including the plaintiff and the defendant. The defendant acknowledged that she had filed a pro se appearance in the underlying action and that she had listed her address as 11 East 67th Street, New York, New York on the appearance form. She testified that she had lived at that address for a short time only, perhaps a total of thirty days, but that she did not realize the New York address would be used as her mailing address. She conceded that she did not notify the court of her change in address. The plaintiff and the court, accordingly, had mailed all pleadings and notices in the underlying action to the New York address.

The defendant stated at trial that she never received those pleadings and was unaware that the matter was proceeding to judgment. She testified that she assumed the matter had been withdrawn because she had heard nothing further from the plaintiff in connection with the underlying action. When asked when she first became

---

[5] During the trial, the plaintiff objected when the defendant attempted to elicit testimony as to the number of trees cut on the plaintiff's property and the proper measure of damages for the cut trees. The plaintiff objected on the ground that the defendant was collaterally attacking the judgment in the underlying action. The court allowed the testimony.

aware that a judgment had been rendered against her in the underlying action, she responded that her attorney in another pending matter between the parties notified her of the judgment in April, 2008, when he learned of it at a court conference. It is undisputed that the defendant never appealed from the underlying judgment nor did she move to open the underlying judgment within four months from the date on which it was rendered.

Three witnesses testified at the foreclosure proceeding as to the proper measure of damages for the tree cutting operation in 2003. Mathias Kiefer, a licensed land surveyor and a licensed consulting forester, testified that the value of the trees cut on the plaintiff's property would be, at the most, $450 to $500. John Harney, a licensed real estate broker, testified that the plaintiff's property suffered no diminution in value as a result of the logging operations in 2003. He did note, however, that the logger had been "sloppy" and that debris needed to be removed from the property. Finally, Bibro, the licensed arborist and landscaper who had testified for the plaintiff as to the $50,000 replacement and removal costs at the hearing in damages in the underlying action, testified at the foreclosure proceeding in response to a subpoena served on him by the defendant. He stated that he "probably" would not have recommended that the plaintiff replace the trees that had been cut down on his property in 2003.

The parties filed posttrial briefs. On August 20, 2009, the court issued its memorandum of decision in which it found the debt owed by the defendant, "as adjusted," to be $10,000. The court further found that the fair market value of the defendant's property was $70,000, and it rendered a judgment of foreclosure by sale. The plaintiff filed a motion for articulation on September 8, 2009, requesting that the court provide its factual findings for each claim of law raised by the parties. The

court filed its articulation on December 4, 2009, in which it set forth the following findings and conclusions: (1) the defendant filed a pro se appearance in the underlying action with her address listed as 11 East 67th Street, New York, New York; (2) the defendant was defaulted for her failure to plead in the underlying action on June 21, 2006; (3) the defendant failed to update the appearance form with her current address, which had changed during the course of the proceedings; (4) judgment was rendered against the defendant in the underlying action on the basis of the default and the uncontested damage evidence submitted during the hearing in damages; (5) "[a]lternate economic values were never offered to the trial court [in the underlying action] and therefore the court was *unintentionally misinformed* and judgment entered with the stated inflated values"; (6) the defendant presented defenses to the foreclosure action "based on fraud, accident, mistake and/or surprise";[6] (7) "an unconscionable amount of money [was] awarded to the plaintiff by way of a default judgment"; (8) a foreclosure action is an equitable proceeding, and equitable principles would allow the court to make "a realistic evaluation of the damages to the plaintiff's property"; (9) credible evidence was submitted at the foreclosure trial that demonstrated that the damage to the plaintiff's property was far less significant than the court found in the underlying action; (10) the defendant would forfeit her right of reasonable redemption through "ignorance, mistake or simple oversight" if the amount of the judgment in the underlying action was upheld; (11) "[*m*]*istakes, ignorance and misunderstandings [were] factors in this case*"; (12) the more probative and credible evidence presented at the foreclosure trial led the court to find that twenty trees were cut or damaged on

---

[6] As previously noted, the defendant alleged only fraud in her special defenses. See footnote 3 of this opinion.

the plaintiff's property and that the total value of those trees was $3000; and (13) the plaintiff was entitled to a reasonable attorney's fee of $7000. (Emphasis added.) For those reasons, the court rendered judgment in favor of the plaintiff in the amount of $10,000, plus costs. This appeal and cross appeal followed.

The plaintiff claims that the trial court improperly allowed the defendant to collaterally attack the underlying judgment.[7] He argues that the court, even in an equitable proceeding, should not have permitted the defendant to retry the facts that already had been determined in the underlying action. By admitting such evidence and reducing the amount of the award of damages in the underlying action, the plaintiff claims that the court improperly refused to enforce a valid, binding, prior judgment. The defendant responds, quoting *Hamm* v. *Taylor*, 180 Conn. 491, 497, 429 A.2d 946 (1980), that a court of equity in a foreclosure proceeding has the authority "to withhold foreclosure or to reduce the amount of the stated indebtedness" whenever an underlying judgment has been obtained through fraud, accident or mistake.[8] She claims that a collateral attack on the underlying judgment was permissible in this case because the plaintiff misled the court in the underlying action as to the proper measure of damages for destroyed or damaged trees.

"While courts have an inherent power to open, correct and modify judgments . . . the duration of this

---

[7] "A collateral attack is an attack upon a judgment, decree or order offered in an action or proceeding other than that in which it was obtained, in support of the contentions of an adversary in the action or proceeding . . . ." (Emphasis omitted.) *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 511, 545 A.2d 579 (1988).

[8] The cases cited by the defendant in support of her position are mortgage foreclosure actions, in which the court was required to determine the amount of the debt in that proceeding. Here, the debt had been established by a judgment in a prior proceeding and subsequently was attacked collaterally in the foreclosure proceeding. The factual situations in the cited cases are not apposite to the present case.

power is restricted by statute and rule of practice. In order for a trial court to open a civil judgment, a motion to open or set aside must be filed within four months of the date that judgment is rendered." (Citation omitted.) *Batory* v. *Bajor*, 22 Conn. App. 4, 8, 575 A.2d 1042, cert. denied, 215 Conn. 812, 576 A.2d 541 (1990). See General Statutes §§ 52-212 and 52-212a; Practice Book § 17-43. A trial court has jurisdiction to open a judgment more than four months after it has been rendered, under its common law authority, when the judgment resulted from fraud, duress, accident or mutual mistake. See *Flater* v. *Grace*, 291 Conn. 410, 424, 969 A.2d 157 (2009); *Carabetta* v. *Carabetta*, 133 Conn. App. 732, 735, 38 A.3d 163 (2012). Nevertheless, "[i]t is a well-established principle that courts of equity will not relieve against the operation of judgments rendered through the negligence or inattention of the party claiming to be aggrieved . . . ." (Internal quotation marks omitted.) *Flater* v. *Grace*, supra, 425.

In the present case, the defendant did not appeal from the underlying judgment, nor did she move to open the judgment within four months. Instead, by way of her special defenses in this foreclosure action, she claimed that the underlying judgment was not enforceable because it had been obtained through fraud. Significantly, the defendant did not allege in her special defenses that the judgment had been obtained through accident or mistake.

The court, in its articulation issued December 4, 2009, did not find that the plaintiff had obtained the underlying judgment through fraud, as alleged in the special defenses.[9] Instead, the court concluded that the court

[9] "The four essential elements of fraud are (1) that a false representation of fact was made; (2) that the party making the representation *knew it to be false*; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment." (Emphasis added; internal quotation marks omitted.) *Whitaker* v. *Taylor*, 99 Conn. App. 719, 730, 916 A.2d 834 (2007).

in the underlying action had been "unintentionally misinformed" and that "[m]istakes, ignorance and misunderstandings" were factors leading to the award of damages in the underlying action. The court, however, was constrained to decide the matter as the issues had been pled by the parties.

"Pleadings have an essential purpose in the judicial process. . . . The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried . . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings." (Citations omitted; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 528, 955 A.2d 667 (2008). "[A]*ny judgment should conform to the pleadings, the issues and the prayers for relief.*" (Emphasis added; internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002). "The [trial] court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005). "Facts found but not averred cannot be made the basis for a recovery." (Internal quotation marks omitted.) *Moulton Bros., Inc.* v. *Lemieux*, 74 Conn. App. 357, 361, 812 A.2d 129 (2002). Accordingly, the court should not have concluded that the underlying judgment could be attacked collaterally on the ground of accident or mistake.

Contrary to the defendant's argument, an equitable proceeding does not provide a trial court with unfettered discretion. The court cannot ignore the issues as framed in the pleadings. The court cannot disregard case law. It is well established that equitable relief from the operation of a prior judgment is not available to a party whose fault has contributed to the problem of which that party now complains. "Equity will not, save

in rare and extreme cases, relieve against a judgment rendered as the result of a mistake on the part of a party or his [or her] counsel, unless the mistake is unmixed with negligence, or . . . unconnected with any negligence or inattention on the part of the judgment debtor . . . ." (Internal quotation marks omitted.) *Cavallo* v. *Derby Savings Bank*, 188 Conn. 281, 285, 449 A.2d 986 (1982).[10]

Finally, we note that the defendant is not challenging the jurisdiction of the court that rendered the underlying judgment, but, rather, she is claiming the award was excessive because the court employed an improper measure of damages for damaged trees and debris removal. Her collateral attack focuses on the amount of damages, and the method employed by the court to determine those damages, in the underlying action. Our Supreme Court disapproves of such collateral attacks. "We have strongly disfavored collateral attacks upon judgments because such belated litigation undermines the important principle of finality. . . . The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . *Therefore, in order to succeed in a collateral attack, the party seeking to avoid a judgment must show that it is not merely*

[10] The defendant had notice of the underlying action, as evidenced by the filing of her pro se appearance. On the form, however, she listed a New York address at which she did not receive mail. Moreover, she did not notify the court when she changed addresses. She had the opportunity to defend herself in the underlying proceeding, but she failed to avail herself of that opportunity. She was defaulted for her failure to plead. Proper procedures were followed, and the court rendered an award of damages "[b]ased upon the testimony" the court heard at the hearing in damages. The defendant did not appeal from that judgment nor did she move to open the judgment within four months. The court in the present action did not find that fraud had been used in obtaining the underlying judgment.

*voidable but void.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Meinket* v. *Levinson*, 193 Conn. 110, 113, 474 A.2d 454 (1984). The defendant's claim that the court did not employ the proper measure of damages, thereby awarding the plaintiff excessive damages, is not even arguably jurisdictional. Accordingly, any error of the court in the underlying action, if there was one, was not the type of error that properly could be challenged in a collateral attack on the underlying judgment.

The foreclosure judgment is reversed and the case is remanded with direction to render judgment of foreclosure in favor of the plaintiff in accordance with the amount of the underlying judgment.

In this opinion the other judges concurred.