******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# MANUFACTURERS & TRADERS TRUST COMPANY
## *v.* THERESA VIRGULAK
### (AC 47623)

Suarez, Clark and Westbrook, Js.

*Syllabus*

The defendant property owner, against whom the plaintiff bank sought to foreclose on a judgment lien for unpaid property taxes, appealed from the trial court's judgment of foreclosure by sale following its granting of the plaintiff's motion to dismiss her special defenses and a three count counterclaim sounding in vexatious litigation. The defendant claimed, inter alia, that the court improperly granted the plaintiff's motion to dismiss her counterclaim on the grounds of res judicata and collateral estoppel. In a prior foreclosure action brought by the plaintiff, the court rendered judgment for the defendant on all counts of the complaint except the plaintiff's claim of unjust enrichment for property tax payments that the plaintiff had made on the property. *Held*:

The trial court properly dismissed the defendant's special defenses because they constituted impermissible collateral attacks on the judgment in the prior action, as each special defense sought to contest the validity and enforceability of the judgment in the prior action, a judgment which the defendant did not appeal or seek to open, and none of those special defenses established an entirely obvious lack of jurisdiction on the part of the rendering court, such that they were not subject to dismissal.

The trial court improperly concluded that the defendant's counterclaim was barred by res judicata, as a claim alleging vexatious litigation may not be brought in the same action as that which the defendant claims is vexatious, and, therefore, the defendant was required to wait until the prior action had terminated before bringing her vexatious litigation claims.

The trial court improperly concluded that the doctrine of collateral estoppel was applicable to the defendant's counterclaim, as none of the issues that the defendant sought to litigate by way of her counterclaim were determined by the court in the prior action, nor were they necessary to its decision.

Argued April 23—officially released June 24, 2025

*Procedural History*

Action to foreclose a judgment lien on certain real property owned by the defendant, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Charles T.*

*Lee*, judge trial referee, granted the plaintiff's motion to dismiss the defendant's special defenses and counterclaim; thereafter, the court, *Hon. John F. Kavanewsky, Jr.*, judge trial referee, rendered judgment of foreclosure by sale, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Alexander H. Schwartz*, for the appellant (defendant).

*Brian D. Rich*, with whom, on the brief, was *Jenna T. Cutler*, for the appellee (plaintiff).

*Opinion*

CLARK, J. In this action to foreclose on a judgment lien, the defendant, Theresa Virgulak, appeals from the decision of the trial court granting the motion filed by the plaintiff, Manufacturers & Traders Trust Company, also known as M&T Bank, to dismiss her special defenses and counterclaim and from the subsequent judgment of foreclosure by sale. On appeal, the defendant claims that the court improperly granted the plaintiff's motion to dismiss her (1) three special defenses and (2) three count counterclaim sounding in vexatious litigation. We disagree with the defendant's first claim but agree with her second claim.[1] We therefore affirm in part and reverse in part the judgment of the court.

[1] Although the defendant's principal appellate brief does not label her challenges to the dismissal of her special defenses and counterclaim as separate claims, we divide our discussion of the special defenses and counterclaim into two separate sections of this opinion in light of our decision to affirm the judgment of the trial court as to the special defenses and reverse the judgment as to the counterclaim.

The defendant also claims on appeal that the trial court should have retroactively applied our Supreme Court's decision in *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 249 A.3d 327 (2020), to bar the plaintiff from recovery of property tax payments. In light of our conclusion in part I of this opinion that the defendant's second special defense—which asserted the same claim—constituted an impermissible collateral attack on a judgment rendered in a prior foreclosure action involving the same parties, we reject this claim.

The following facts, as previously set forth by this court, and procedural history are relevant to this appeal. In 2013, JPMorgan Chase Bank, National Association (JPMorgan Chase), commenced a foreclosure action (prior action) against the defendant and her husband, Robert J. Virgulak (Robert). "On or about December 11, 2006, [Robert] executed and delivered to [JPMorgan Chase] a note for a loan in the principal amount of $533,000 (note). The defendant was not a signatory on the note. On the same date, the defendant signed a document titled 'Open-End Mortgage Deed' (mortgage) for residential property she owns at 14 Bayne Court in Norwalk (property). The mortgage recited that it was given to secure a note dated December 11, 2006, and recited that the note was signed by the defendant as 'Borrower' in the amount of $533,000. The term 'Borrower' is defined in the mortgage deed as 'THERESA VIRGULAK, MARRIED.' The mortgage did not reference Robert. The defendant did not sign any guarantee.

"On or about February 1, 2010, after JPMorgan Chase failed to receive payments in accordance with the terms of the note, the note went into default and JPMorgan Chase elected to accelerate the balance due. . . . [I]n February, 2013, JPMorgan Chase commenced [the prior] action against the couple. The action sought to foreclose the mortgage that JPMorgan Chase claimed to have on the property. In September, 2014, JPMorgan Chase withdrew the [prior] action against Robert, as he had filed for bankruptcy and been granted an unconditional discharge of the debt.

"Thereafter, JPMorgan Chase filed a motion to substitute party plaintiff, stating that it had assigned the subject mortgage deed and note to Hudson City Savings Bank (Hudson). This motion was granted by the court [*Heller*, *J.*] on August 18, 2015.

"On September 25, 2015, the defendant filed a motion for summary judgment arguing that Hudson was precluded from foreclosing the mortgage. In particular, she argued that she had not defaulted under the terms of the note because she was never a party to a promissory note with the plaintiff or any of its predecessors-in-interest. The motion was denied by the court [*Hon. Kevin Tierney*, judge trial referee] on January 14, 2016, on the basis of the court's determination that an issue of material fact remained with respect to whether the mortgage deed provided reasonable notice to third parties that the defendant was securing Robert's obligation.

"On March 18, 2016, the defendant served Hudson with requests for admission. On May 6, 2016, Hudson filed notice with the court that it had responded to the defendant's requests.

"On August 9, 2016, [the plaintiff], into which Hudson had merged, filed a motion to substitute itself as the party plaintiff and requested leave to amend the complaint in order to add two additional causes of action. The court [*Heller, J.*] granted the motion on August 15, 2016. In the first count of the plaintiff's three count amended complaint, the plaintiff sought a judgment of foreclosure against [the defendant and Robert]. In the second count, it sought equitable reformation of the note in order to include the defendant as a borrower on the note. In the third count, the plaintiff pleaded that the defendant had been unjustly enriched because (1) the proceeds of the note were used to pay off loans which she was obligated to pay and (2) she had free use of the subject property without satisfying the terms of the mortgage, which she had executed. . . .

"On April 12, 2017 [following a trial before the court, *Hon. David R. Tobin*, judge trial referee], the court issued its memorandum of decision. The court found

in favor of the defendant on the foreclosure and reformation counts of the complaint. In particular, the court stated, among other things, that '[t]he court finds that the plaintiff has not sustained its burden of proving, by clear and convincing evidence, that it [was] entitled to the equitable remedy of reformation of the mortgage deed . . . . Accordingly, the court finds the issues on the second count for [the defendant] and against the plaintiff. Since the plaintiff failed to present any authority to the court which would allow the plaintiff to prevail on the first count [foreclosure claim] in the absence of reformation of the mortgage deed, the court [also] finds the issues on the first count for [the defendant] and against the plaintiff.'

"The court then proceeded to address the plaintiff's unjust enrichment claim, noting that the defendant had been benefitted in several respects as a result of the loan that Robert had obtained . . . . The court ultimately determined that the plaintiff's responses to the [defendant's] requests for admissions [in which the plaintiff admitted, inter alia, that the defendant did not owe any money to the plaintiff] precluded any recovery on its unjust enrichment claim, except for the property tax payments that the defendant conceded that she owed to the plaintiff." (Footnotes omitted.) *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 192 Conn. App. 688, 692–97, 218 A.3d 596 (2019), aff'd, 341 Conn. 750, 267 A.3d 753 (2022). The court found that the plaintiff was entitled to $65,807.96 in damages on the unjust enrichment count for the property taxes that it had paid on the property.

The plaintiff appealed, and the judgment was affirmed both by this court and by our Supreme Court. See id., 692. The defendant did not appeal, nor did she move to open the judgment. On March 7, 2022, following the affirmance of the judgment by our Supreme Court, the plaintiff filed a motion for judgment in accordance

with our Supreme Court's opinion, which the court, *Spader, J.*, granted on April 28, 2022. The court's April 28, 2022 order provided in relevant part: "Upon review of the record, the court grants the plaintiff's motion as to count three of the complaint. Judgment shall enter for the plaintiff on count three for financial damages in the amount of $65,807.96 as of the date of trial. . . ."

On June 28, 2022, the defendant commenced an action against JPMorgan Chase, Hudson, and the plaintiff, in which she asserted three counts sounding in common-law and statutory vexatious litigation pursuant to General Statutes § 52-568.[2] See generally *Virgulak* v. *JPMorgan Chase Bank, N.A.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-22-6057307-S (vexatious litigation action). In her revised complaint dated September 12, 2022, the defendant alleged in relevant part that the prior action had terminated in her favor and that the plaintiff, JPMorgan Chase, and Hudson had commenced and prosecuted the prior action with malice and without probable cause. Her complaint did not challenge the validity of, or otherwise mention, the damages award for property taxes on the unjust enrichment count that had been rendered by the trial court in favor of the plaintiff in the prior action. The defendant subsequently withdrew the vexatious litigation action on May 8, 2023, prior to trial.

On February 22, 2023, while the vexatious litigation action was still pending, the plaintiff commenced the present action. In its complaint, the plaintiff alleged

_____

[2] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

that, on May 9, 2022, shortly after Judge Spader granted its motion for judgment in accordance with our Supreme Court's decision, it had caused a judgment lien on the property—based on the judgment in the prior action—to be recorded in the Norwalk town clerk's office. The plaintiff further alleged that the judgment had never been paid in whole or in part. It sought foreclosure of the judgment lien, prejudgment and postjudgment interest, costs, a reasonable attorney's fee, and such other relief as the court deemed just and proper.

On May 2, 2023, the defendant filed an answer, special defenses, setoff, and counterclaim. She set forth three special defenses: (1) that the "plaintiff is barred from pursuing this action on account of its actions in the [prior action]" (first special defense); (2) that the "plaintiff is barred from pursuing this action because it illegally and unlawfully sought in personam to collect funds from the defendant instead of pursuing a deficiency judgment" (second special defense); and (3) that, "[b]ecause the plaintiff lost the [prior] action between the parties in the Superior Court, the Appellate Court, and the Supreme Court, it had no right to collect real estate taxes in the [prior] action," rendering the "judgment it seeks to enforce . . . void" (third special defense). In her setoff, which immediately followed her special defenses, the defendant requested that, "[s]hould the [court] find that the judgment [in the prior action] is valid and enforceable, any funds the defendant owes should be set off against any judgment the defendant receives through her [counterclaim]." In her counterclaim, the defendant set forth three counts sounding in common-law and statutory vexatious litigation that mirrored those she had asserted in her complaint in the vexatious litigation action.

On May 10, 2023, the plaintiff filed a motion to dismiss the defendant's counterclaim and special defenses,

accompanied by a memorandum of law. The plaintiff argued therein that the defendant's three special defenses and counterclaim were barred by res judicata and collateral estoppel.[3] In particular, the plaintiff argued that "[t]he . . . subject[s] of these special defenses and [the counterclaim] were conclusively litigated and decided by the Superior Court [in the prior action]; indeed, they were essential to the court's entering of judgment in the first place." The plaintiff also argued that the defendant "had a full and fair opportunity to plead and litigate her claims and defenses in [the prior] action," "[t]he court reviewed the claims provided and entered its ruling accordingly," and "all of these claims have had a ruling by way of the Superior Court's entry of final judgment . . . ."

The defendant filed an objection to the motion to dismiss on July 10, 2023. In her objection, the defendant argued, inter alia, that her second and third special defenses were supported by *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 650, 249 A.3d 327 (2020), in which our Supreme Court held that, in the context of a strict foreclosure action, the only procedure available to a plaintiff to recover its mortgage

---

[3] We note that, in the heading of the section of the memorandum of law that addressed res judicata, the plaintiff made no mention of the counterclaim, stating only: "The special defenses are also barred by the doctrine of res judicata." However, in the body of its argument within that section, the plaintiff argued that "[the defendant's] defenses, *as well as the factual basis for her purported* [*counterclaim*] . . . could have been—and were— raised in the [prior] action" and further claimed that res judicata barred the defendant from litigating "her *claims and defenses*" in the present action. (Emphasis added.) Moreover, the motion to dismiss itself argued that "both the [special] defenses and [counterclaim] are barred by the doctrines of res judicata and collateral estoppel . . . ." Finally, the defendant's principal appellate brief, which refers to the plaintiff's motion to dismiss as a motion "to dismiss the counterclaim and special defenses based on res judicata and collateral estoppel" and accuses the plaintiff of impermissibly "rais[ing] collateral estoppel or res judicata as a defense to . . . the [counterclaim]," makes clear that the defendant understood the plaintiff to be arguing that both res judicata and collateral estoppel barred the counterclaim.

debt—including payments advanced to pay real estate taxes—is a deficiency judgment. The plaintiff filed a reply on July 11, 2023.

On October 11, 2023, the court, *Hon. Charles T. Lee*, judge trial referee, issued a memorandum of decision in which it granted the plaintiff's motion to dismiss. The court determined that each special defense asserted by the defendant was invalid. With respect to the first special defense, the court concluded that it was deficient because (1) it failed to allege any relevant facts in violation of the requirements of Practice Book § 10-1,[4] and (2) "the court finds no actions taken by the plaintiff in the [prior] action which would prevent it from seeking to enforce the judgment against the defendant for recoupment of taxes." With respect to the second special defense, the court determined that the plaintiff "was under no obligation to seek a deficiency judgment" and that *Essaghof* did not apply because "the present case is not . . . a [strict foreclosure] proceeding. . . . Rather . . . the monetary award of $65,807.96 was granted under the third count [in the prior action] for unjust enrichment in failing to comply with the mortgage's contractual requirement of paying taxes on the mortgaged property." With respect to the third special defense, the court concluded that it was invalid because the defendant's contention that the plaintiff had "lost" the prior action was, in the court's view, "not consistent with the pleadings or facts in the

[4] Practice Book § 10-1 provides: "Each pleading shall contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved, such statement to be divided into paragraphs numbered consecutively, each containing as nearly as may be a separate allegation. If any such pleading does not fully disclose the ground of claim or defense, the judicial authority may order a fuller and more particular statement; and, if in the opinion of the judicial authority the pleadings do not sufficiently define the issues in dispute, it may direct the parties to prepare other issues, and such issues shall, if the parties differ, be settled by the judicial authority."

record," in that the plaintiff had "won the third count, and its claim for recovery of taxes it paid on the mortgaged property was specifically authorized by every court to consider the question." As for the counterclaim, the court concluded that the defendant's vexatious litigation claims were barred by res judicata and collateral estoppel. In particular, the court concluded that the present action was not based on the foreclosure and equitable reformation counts on which the plaintiff had lost in the prior action but, rather, on the unjust enrichment count, on which the plaintiff had received the $65,807.96 damages award for property tax payments. It accordingly stated that "[t]he finding that this action is based on the affirmed claim for money damages in the [prior action] . . . clearly satisfies the requirements of the doctrines of res judicata and collateral estoppel, rendering this counterclaim invalid."

The plaintiff thereafter filed a motion for summary judgment as to liability, which the court, *Hon. John F. Kavanewsky, Jr.*, judge trial referee, granted on February 21, 2024. On March 15, 2024, the plaintiff filed a motion for a judgment of foreclosure by sale, which the court granted on May 1, 2024. This appeal followed.[5]

## I

The defendant claims that the trial court should have permitted her to raise her special defenses in the context of the present case because her obligation to reimburse the plaintiff for property tax payments flowed from the plaintiff's alleged misconduct in instituting and maintaining the prior action. In response, the plaintiff argues, inter alia, that the special defenses constituted impermissible collateral attacks on the judgment in the prior action.[6] We agree with the plaintiff.

---

[5] On October 30, 2023, pursuant to Practice Book § 61-5, the defendant filed a notice of intent to appeal from Judge Lee's October 11, 2023 decision granting the plaintiff's motion to dismiss.

[6] Because the trial court did not dismiss the special defenses on this ground, we construe the plaintiff's principal appellate brief as raising an

The following legal principles and standards of review are relevant to our review of this claim. "A collateral attack is an attack upon a judgment, decree or order offered in an action or proceeding other than that in which it was obtained, in support of the contentions of an adversary in the action or proceeding . . . ." (Internal quotation marks omitted.) *Patrick* v. *111 Clearview Drive, LLC*, 224 Conn. App. 401, 410, 313 A.3d 391 (2024). "Black's Law Dictionary defines the phrase 'collateral attack' as, inter alia, '[a]n attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective.' " Id., 411 n.9. "A court properly may dismiss a case that constitutes an improper collateral

alternative ground to affirm the trial court's judgment. It is well established that, "[w]here the trial court reaches a correct decision but on [alternative] grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . [W]e . . . may affirm the court's judgment on a dispositive [alternative] ground for which there is support in the trial court record." (Citation omitted; internal quotation marks omitted.) *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 599, 790 A.2d 1178 (2002). Affirmance of a judgment on an alternative ground is proper when the issue presents a question of law, the essential facts of which are undisputed and over which our review is plenary, and when our consideration of the issue will not subject the appellant to prejudice or unfair surprise. See, e.g., *Grady* v. *Somers*, 294 Conn. 324, 349 n.28, 984 A.2d 684 (2009).

In the present case, the question of whether the defendant's special defenses constituted impermissible collateral attacks on the judgment in the prior action presents a question of law, over which our review is plenary. See, e.g., *Ciarleglio* v. *Martin*, 228 Conn. App. 241, 257–58, 325 A.3d 219, cert. denied, 350 Conn. 920, 325 A.3d 218 (2024). No essential facts pertinent to this claim are in dispute. Moreover, the plaintiff raised this alternative ground for affirmance in its principal appellate brief, and, although she elected not to do so, the defendant had the opportunity to file a reply brief. See, e.g., *Sanchez* v. *Commissioner of Correction*, 203 Conn. App. 752, 761, 250 A.3d 731 (observing that appellant will suffer no prejudice from consideration of alternative grounds for affirmance when appellant "has the opportunity to respond to [those] grounds in the reply brief" (internal quotation marks omitted)), cert. denied, 336 Conn. 946, 251 A.3d 77 (2021). Accordingly, we consider the alternative ground for affirmance advanced by the plaintiff.

attack on a judgment. . . . The reason for this is that the court can offer no practical relief to the party collaterally attacking the prior judgment, rendering the action nonjusticiable." (Citation omitted.) *Peck* v. *Statewide Grievance Committee*, 198 Conn. App. 233, 248, 232 A.3d 1279 (2020).

"[I]t is well settled that [f]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored. . . . The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings." (Citation omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771, 143 A.3d 578 (2016).

"[U]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal *entirely invalid,* he or she must resort to direct proceedings to correct perceived wrongs, rather than to a collateral proceeding. . . . [T]o sustain a collateral attack on a judgment, the lack of jurisdiction must be entirely obvious and . . . the alleged deficiency must amount to a fundamental mistake that is so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." (Citation omitted; emphasis in original; internal quotation marks

omitted.) *Schoenhorn* v. *Moss*, 347 Conn. 501, 515, 298 A.3d 236 (2023). "Additionally, [i]f a court has never acquired jurisdiction over a defendant [by proper service of process] . . . any judgment ultimately entered is void and subject to vacation or collateral attack." (Internal quotation marks omitted.) *Patrick* v. *111 Clearview Drive, LLC*, supra, 224 Conn. App. 411. "[A] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Lesser procedural irregularities . . . do not make a final judgment void." (Citations omitted; internal quotation marks omitted.) *Meinket* v. *Levinson*, 193 Conn. 110, 115, 474 A.2d 454 (1984).

The question of whether the defendant's special defenses constituted impermissible collateral attacks on the judgment in the prior action presents a question of law, over which our review is plenary. See, e.g., *Boyajian* v. *Planning & Zoning Commission*, 206 Conn. App. 118, 124, 259 A.3d 699 (2021). To the extent that our resolution of this issue requires us to interpret the defendant's answer, special defenses, setoff, and counterclaim, that, too, presents a question of law over which our review is plenary. See, e.g., *Perez* v. *Cumba*, 138 Conn. App. 351, 367, 51 A.3d 1156 (construction of pleadings is question of law subject to plenary review), cert. denied, 307 Conn. 935, 56 A.3d 712 (2012).

Each of the defendant's special defenses in the present case asserted that the judgment upon which the plaintiff sought to foreclose—and which the defendant had neither appealed nor sought to open—was ineffective, by pointing to various alleged defects in the manner in which that judgment was rendered. The first special defense claimed that the plaintiff's unspecified "actions in the [prior action]" precluded it from foreclosing on the lien; the second claimed that the judgment "illegally and unlawfully" had been obtained by means other than a deficiency judgment; and the third claimed that "the

judgment [the plaintiff] seeks to enforce is void" because the plaintiff "had no right to collect real estate taxes in the [prior] action." Moreover, the setoff immediately following the special defenses—which requested that, "[*s*]*hould the* [*court*] *find that the judg-ment* [*in the prior action*] *is valid and enforceable,* any funds the defendant owes should be set off against any judgment the defendant receives through her [counterclaim]"—underscores that the special defenses sought to contest the validity and enforceability of the judgment in the prior action. (Emphasis added.) As such, we conclude that the three special defenses constituted collateral attacks on that judgment. Cf., e.g., *Warner* v. *Brochendorff,* 136 Conn. App. 24, 35, 43 A.3d 785 (special defense in judgment lien foreclosure claiming that underlying judgment was obtained through fraud and was unenforceable because plaintiff had induced court to employ improper measure of damages constituted impermissible collateral attack), cert. denied, 306 Conn. 902, 52 A.3d 728 (2012).

Having concluded that the special defenses constituted collateral attacks on the judgment, we now consider whether they nonetheless established an "entirely obvious" lack of jurisdiction on the part of the rendering court, such that they were not subject to dismissal. We note at the outset that none of the special defenses claimed that the court in the prior action failed to obtain personal jurisdiction over the defendant by improper service of process. With respect to subject matter jurisdiction, neither the first special defense's vague assertion that the plaintiff's "actions in the [prior action]" precluded it from foreclosing on the lien in the present case, nor the third special defense's conclusory assertion that the plaintiff had "no right to collect real estate taxes in the [prior] action" because it "lost" that action, make a colorable showing—let alone an obvious one—that the rendering court was somehow incompetent to

entertain the prior action, including the plaintiff's claim for unjust enrichment. As such, we readily conclude that the first and third special defenses amounted to impermissible collateral attacks.

With respect to the second special defense, which challenged the plaintiff's right to recover property taxes on the basis of our Supreme Court's holding in *Essaghof*, we conclude that this collateral attack was impermissible as well. Nothing in *Essaghof* indicates that the holding of that case upon which the defendant relied in pleading her second special defense—namely, that a trial court in a strict foreclosure proceeding may not order a defendant to reimburse the plaintiff for property tax payments outside of a deficiency judgment—is jurisdictional. Indeed, the word "jurisdiction" does not appear in *Essaghof*; nor did our Supreme Court, in concluding in that case that the trial court's order directing the defendants to reimburse the plaintiff for property taxes was an abuse of discretion,[7] order that the plaintiff's claim for reimbursement of property taxes be dismissed. Cf., e.g., *Pelc* v. *Southington Dental Associates, P.C.*, 232 Conn. App. 393, 413,     A.3d (2025), petition for cert. filed (Conn. May 27, 2025) (No. 240383). Rather, our Supreme Court in *Essaghof* framed the issue on appeal as "whether the trial court's order [in that case] requiring the defendants to reimburse the plaintiff for tax and insurance premium advancements *was a valid exercise of the court's equitable authority*" in light of the statutory scheme governing strict foreclosure proceedings; (emphasis added) *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 336 Conn.

---

[7] The very fact that our Supreme Court in *Essaghof* reviewed the trial court's order under an abuse of discretion standard further indicates the nonjurisdictional character of its holding. Cf., e.g., *Pennymac Corp.* v. *Tarzia*, 215 Conn. App. 190, 200 n.8, 281 A.3d 469 (2022) (declining to apply abuse of discretion standard in reviewing trial court's conclusion that it had subject matter jurisdiction because "[t]he issue of subject matter jurisdiction is not a matter of discretion").

639; which presents a question distinct from that of the court's subject matter jurisdiction. See, e.g., *Amodio* v. *Amodio*, 247 Conn. 724, 728, 724 A.2d 1084 (1999) (explaining that, "[a]lthough related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction" and that latter addresses court's "authority or competence to decide the class of cases to which the action belongs" whereas former concerns "the way in which [the court's] power [to hear and determine] must be exercised in order to comply with the terms of the statute" (internal quotation marks omitted)). As such—even if we assume that the plaintiff could not seek damages for property taxes in the prior action without running afoul of *Essaghof*—in relying on *Essaghof* to claim, in the present case, that the plaintiff "illegally and unlawfully" had procured the judgment in the prior action without pursuing a deficiency judgment, the defendant was not raising an "entirely obvious" claim that the rendering court lacked subject matter jurisdiction. The second special defense, therefore, also constituted an impermissible collateral attack.

For the foregoing reasons, we conclude that the defendant's three special defenses constituted impermissible collateral attacks on the judgment in the prior action. The court therefore properly dismissed the special defenses.

II

The defendant also claims that the court improperly concluded that her counterclaim was barred by res judicata and collateral estoppel. In response, the plaintiff argues that the defendant's counterclaim sought to use "the facade of vexatious litigation to obtain another opportunity to relitigate the [prior] judgment" and to "relitigate issues that were already decided by a trial court, [this court], and [our] Supreme Court . . . ." The plaintiff also argues, as alternative grounds for

affirmance, that the counterclaim did not state a legally sufficient claim for vexatious litigation and that it constituted an impermissible collateral attack on the judgment in the prior action. We agree with the defendant and are unpersuaded by the alternative grounds for affirmance advanced by the plaintiff.[8]

We note, at the outset of our analysis, that the plaintiff's claims that the counterclaim was barred by res judicata and collateral estoppel should have been asserted as affirmative defenses. See, e.g., *Wells Fargo Bank*, *National Assn.* v. *Doreus*, 218 Conn. App. 77, 82 n.5, 290 A.3d 921 ("[r]es judicata and collateral estoppel are affirmative defenses that may be waived if not properly pleaded"), cert. denied, 347 Conn. 904, 297 A.3d 198 (2023); *Elder* v. *Kauffman*, 204 Conn. App. 818, 824, 254 A.3d 1001 (2021) ("res judicata properly is raised by means of a special defense and . . . generally is not raised by a motion to dismiss"). We nonetheless address the merits of the trial court's application of the doctrines of res judicata and collateral estoppel to the counterclaim, as the parties have asked us to do, because the trial court's dismissal of the counterclaim on that basis indicates that the issue is likely to arise on remand.[9] Under these circumstances, judicial economy

---

[8] Because the trial court did not decide the issue, and the plaintiff has not raised it on appeal, we express no view as to whether the counterclaim satisfies the transaction test for counterclaims set forth in Practice Book § 10-10, which provides in relevant part: "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ."

[9] Notwithstanding the plaintiff's failure properly to plead res judicata and collateral estoppel, the record does not reflect that the defendant ever objected to the plaintiff's claims that the counterclaim was barred by res judicata and collateral estoppel on the basis that those claims had not been raised in the appropriate manner. Therefore, if we did not reach the merits of the trial court's application of res judicata and collateral estoppel to the counterclaim, upon remand, the plaintiff would be entitled to raise those preclusion claims. See, e.g., *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 234, 4 A.3d 851 (2010); *Carnese* v. *Middleton*, 27 Conn. App. 530, 537, 608 A.2d 700 (1992).

counsels in favor of our resolving the defendant's claim as it has been framed for and submitted to us.

## A

We begin with the trial court's conclusion that the counterclaim was barred by res judicata and collateral estoppel. The following legal principles and standard of review are relevant to our analysis. "The applicability of the doctrines of res judicata or collateral estoppel presents a question of law, over which our review is plenary." *Somers* v. *Chan*, 110 Conn. App. 511, 526, 955 A.2d 667 (2008). "Under the doctrine of res judicata [or claim preclusion], a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." (Internal quotation marks omitted.) *Milford* v. *Andresakis*, 52 Conn. App. 454, 460, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999). "In order for res judicata to apply, four elements must be met: (1) the [prior] judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity [in the prior action] to litigate the [omitted claim] fully; and (4) the same underlying claim must be at issue." (Internal quotation marks omitted.) *Solon* v. *Slater*, 345 Conn. 794, 825, 287 A.3d 574 (2023). "[T]he essential concept of the modern rule of [res judicata] is that a judgment against [a party] is preclusive not simply when it is on the merits but when the procedure in the first action afforded [the party] a fair opportunity to get to the merits." (Internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 459, 998 A.2d 766 (2010).

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and

necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent [on] the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . Before collateral estoppel applies [however] there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . . In other words, collateral estoppel has no application in the absence of an identical issue. . . . Further, an overlap in issues does not necessitate a finding of identity of issues for the purposes of collateral estoppel." (Internal quotation marks omitted.) *Elwell* v. *Kellogg*, 220 Conn. App. 822, 840–41, 299 A.3d 1166, cert. denied, 348 Conn. 927, 304 A.3d 861 (2023).

"In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under § 52-568, and differs from a common-law action only in that a finding

of malice is not an essential element, but will serve as a basis for higher damages. . . . In the context of a claim for vexatious litigation, the defendant lacks probable cause if he [or she] lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted.'' (Internal quotation marks omitted.) *Rockwell* v. *Rockwell*, 196 Conn. App. 763, 769–70, 230 A.3d 889 (2020).

We do not agree with the trial court's conclusion that the defendant's counterclaim, which sounded in common-law and statutory vexatious litigation and sought money damages on the basis of the plaintiff's conduct in connection with the claims that the defendant actually prevailed on in the prior action, was barred by res judicata on the basis of the judgment rendered in the prior action. In order for res judicata to bar a claim, the party asserting that claim must have had an adequate opportunity fully to litigate it in the prior action. See, e.g., *Solon* v. *Slater*, supra, 345 Conn. 825. It is well established, however, that ''a counterclaim alleging vexatious litigation may not be brought in the same action as that which the defendant claims is vexatious''; *Somers* v. *Chan*, supra, 110 Conn. App. 542; see also, e.g., *U.S. Bank National Assn.* v. *Bennett*, 195 Conn. App. 96, 105, 223 A.3d 381 (2019); moreover, this court previously has affirmed the dismissal, on ripeness grounds, of a vexatious litigation action predicated on a separate action that had not yet fully terminated. See *Scalise* v. *East Greyrock, LLC*, 148 Conn. App. 176, 184, 85 A.3d 7, cert. denied, 311 Conn. 946, 90 A.3d 976 (2014). The reason for these decisions is straightforward: ''[A] claim for vexatious litigation requires a plaintiff to allege that the *previous lawsuit* was initiated maliciously . . . [and that this] *prior litigation* terminated in [her] favor''; (emphasis in original; internal quotation marks omitted) *Somers* v. *Chan*, supra, 542; which she cannot do while the action she claims to be

vexatious remains pending. The defendant, thus, could not have litigated her vexatious litigation claims in the context of the prior action, because that was the very action that she claimed was vexatious. She was required to wait until the prior action had terminated before bringing her vexatious litigation claims.

We also disagree with the trial court that the defendant's counterclaim was barred by collateral estoppel. None of the issues that the defendant sought to litigate by way of her counterclaim—namely, whether the prior action was brought with malice or whether the plaintiff lacked probable cause, i.e., a "reasonable, good faith belief" in the facts alleged—were determined by the court in the prior action, nor were they necessary to its decision. Rather, a review of Judge Tobin's memorandum of decision in the prior action reveals that his decision addressed the following issues: the parties' intent in signing the mortgage deed, in the context of a claim seeking equitable reformation of the deed;[10] whether, in the absence of reformation of the deed, the plaintiff would be able to prevail on its foreclosure claim; whether the defendant had received benefits for which she unjustly failed to pay the plaintiff, to the plaintiff's detriment; whether the merits of the prior action would be served, or the defendant prejudiced, by permitting the plaintiff to withdraw certain factual admissions it previously had made; whether the defendant had waived her right to rely on those admissions; and whether the defendant's special defenses, none of which raised the same issues presented by the counterclaim,[11] precluded the plaintiff from recovering damages for property taxes. As such, the doctrine of collateral estoppel was inapplicable. The trial court's

[10] In its complaint in the prior action, the plaintiff sought equitable reformation of the note, rather than the mortgage deed. In its posttrial brief, however, it changed its position and sought reformation of the deed rather than the note.

[11] The defendant asserted the following special defenses in the prior action: "(1) the plaintiff misapplied funds paid on the loan in contravention to the

dismissal of the counterclaim on the basis of res judicata and collateral estoppel was therefore improper.

## B

We now turn to the alternative grounds for affirmance advanced by the plaintiff. First, the plaintiff argues that the counterclaim did not state a legally sufficient claim for vexatious litigation because "the instant matter, which [the defendant] claims amounts to vexatious litigation, was brought to enforce the sole count of the [prior action] that was entered in [the plaintiff's] favor." (Emphasis omitted.) We reject this argument. Insofar as the plaintiff challenges the legal sufficiency of the counterclaim, rather than the court's jurisdiction to entertain it, it raises a basis for striking, rather than dismissing, the counterclaim. See, e.g., *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 723 n.6, 161 A.3d 630 (2017) (observing that "[a] motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court," whereas "the motion to strike attacks the sufficiency of the pleadings" (internal quotation marks omitted)). Moreover, the counterclaim did not allege that the *present* action amounted to vexatious litigation; rather, it alleged that the *prior* action amounted to vexatious litigation.[12] The plaintiff's argument therefore attacks the sufficiency of a claim that the defendant did not raise.

loan documents; (2) the plaintiff failed to give proper notice of default and acceleration; (3) the parties entered into an oral forbearance agreement; (4) the plaintiff acted in a commercially unreasonable manner with respect to the [defendant and Robert's] obligations under the loan; (5) the plaintiff violated the implied covenant of good faith and fair dealing; (6) the mortgage debt was discharged in bankruptcy proceedings filed by Robert; (7) the determination of the United States Bankruptcy Court that the note executed by Robert was unsecured estops the plaintiff from claiming a security interest in [the property]; [and] (8) the plaintiff's claims are barred by the applicable statute of limitations."

[12] Although the plaintiff's principal appellate brief is not a model of clarity, we do not understand the plaintiff to argue that the defendant cannot estab-

Second, the plaintiff contends that the counterclaim constituted an impermissible collateral attack on the judgment in the prior action. Although our Supreme Court has cautioned that vexatious litigation claims may operate as impermissible collateral attacks in the absence of a favorable termination of the action alleged to be vexatious; see, e.g., *DeLaurentis* v. *New Haven*, 220 Conn. 225, 251, 597 A.2d 807 (1991); the plaintiff does not expressly argue, and indeed appears to avoid making any claim, that the defendant cannot satisfy the favorable termination requirement with respect to the prior action. See footnote 12 of this opinion. Moreover, the counterclaim does not make any claims as to the validity or enforceability of the judgment for property taxes and, indeed, does not even mention it. The plaintiff's argument therefore fails.

The judgment is reversed with respect to the dismissal of the defendant's counterclaim and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

lish that the prior action terminated in her favor simply because the plaintiff obtained a money judgment in connection with the unjust enrichment count. To the contrary, the plaintiff expressly—and correctly—concedes that, under certain limited circumstances, "a claim for vexatious litigation can be brought even if the [prior] action was only partially terminated in [the defendant's] favor." See, e.g., *Scalise* v. *East Greyrock, LLC*, supra, 148 Conn. App. 183 n.10; see also, e.g., *Janetka* v. *Dabe*, 892 F.2d 187, 190 (2d Cir. 1989). Because the parties have not briefed the question, we express no view as to whether those circumstances apply in the present case.